**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Charles HAMPTON, Defendant–Appellant.**

No. 82SA575.

Supreme Court of Colorado, En Banc.

June 13, 1988.

Rehearing Denied July 5, 1988.

**1346**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Denver, for plaintiff-appellee.

Hutchinson, Black, Hill & Cook, James England, Boulder, for defendant-appellant.

QUINN, Chief Justice.

This case is a sequel to our opinion in *People v. Hampton*, 696 P.2d 765 (Colo. 1985), in which we vacated the conviction of Charles Hampton, the defendant, for the crimes of aggravated robbery, conspiracy to commit aggravated robbery, and a crime of violence, and remanded the case to the trial court to apply a multi-factor balancing test in determining whether alibi evidence was properly excluded from the defendant's trial. Because on remand the trial court ruled that the evidence was properly excluded, the case is again before us for review of the court's exclusion of alibi evidence and, as well, three other issues left unresolved in our earlier opinion. Finding no reversible error, we affirm the judgment of conviction.

## I.

The basic facts have been summarized in our earlier opinion, *see Hampton*, 696 P.2d at 769–71, and we will state only those facts pertinent to the particular issues herein raised. When this case was before us in 1985, we vacated the judgment of conviction and remanded the case to the trial court for the purpose of determining whether there was good cause to admit the defendant's alibi evidence in spite of his

noncompliance with the disclosure requirement of Crim.P. 12.1, which provides as follows:

The prosecuting attorney may serve upon the defendant within a reasonable time before the trial a written notice specifying with reasonable certainty the contention of the prosecuting attorney as to the time when and the place where the defendant committed the offense charged. In that event the defendant, if he intends to introduce evidence that he was at a place other than that specified, shall serve upon the prosecuting attorney within a reasonable time after service of the prosecuting attorney's notice a statement in writing specifying the place where he claims to have been and the names and addresses of the witnesses he will call to support the defense of alibi. Upon receiving this statement, the prosecuting attorney shall advise the defendant of the names and addresses of any additional witnesses who may be called to refute such alibi within a reasonable time after their identity becomes known. Neither the prosecuting attorney nor the defendant shall be permitted at the trial to introduce evidence inconsistent with his specification, unless the court for good cause and upon just terms permits the specification to be amended. If a defendant fails to make the specification required by this section, the court shall exclude evidence in his behalf that he was at a place other than that specified by the prosecuting attorney unless the court is satisfied upon good cause shown that such evidence should be admitted.[1]

In our prior opinion we enumerated the following factors for the trial court's consideration in determining whether there was good cause to admit the defendant's alibi evidence: (1) the reason for and the degree of culpability associated with the failure to timely respond to the prosecu-

1. Crim.P. 12.1 was repealed on March 15, 1985, effective July 1, 1985, but the disclosure provisions of Crim.P. 12.1 were incorporated with some modification into Crim.P. 16, Part II(d), which deals with the defendant's disclosure obligations to the prosecution. The significant

modification is that Crim.P. 16, Part II(d), requires the defendant to disclose alibi evidence "as soon as practicable but not later than thirty days before trial." These new provisions of Crim.P. 16, Part II(d), became effective on July 1, 1985.

tion's specification of time and place; (2) whether and to what extent the nondisclosure prejudiced the prosecution's opportunity to effectively prepare for trial; (3) whether events occurring subsequent to the defendant's noncompliance mitigated the prejudice to the prosecution; (4) whether there was a reasonable and less drastic alternative to the preclusion of alibi evidence; and (5) any other relevant factors arising out of the circumstances of the case. *Hampton*, 696 P.2d at 778. We directed the trial court to identify on the record those factors which it considered critical to its ultimate resolution of the "good cause" issue so that there could be meaningful appellate review of the trial court's ruling. We further stated that if the trial court on remand were to determine that the defendant's alibi evidence was properly excluded from the trial, then the judgment of conviction should be reinstated and the case certified to this court for review of the court's ruling and the following three issues not addressed in our prior opinion: whether the exclusion sanction of Crim.P. 12.1 was unconstitutionally applied in this case; whether the trial court violated due process of law by denying the defendant's request for a continuance based on his attorney's alleged unpreparedness; and whether the trial court erred in giving an instruction on recent and unexplained possession of stolen property. *Id.* at 779. We also directed that if the trial court on remand were to determine that there was good cause to permit the alibi evidence notwithstanding the defendant's noncompliance with Crim.P. 12.1, then the defendant should be granted a new trial. *Id.*

On remand, the trial court heard arguments from both the prosecutor and defense counsel and made extensive findings with respect to whether there was good cause to admit the defendant's alibi evidence notwithstanding his failure to comply with the disclosure requirements of Crim.P. 12.1. In addressing the first factor—the

reason for and the degree of culpability associated with the failure to timely respond to the prosecution's specification of time and place—the court found that the prosecution served the defendant with the written specification of the time and place of the offense in September 1977, approximately a month after the offenses had taken place, and that it should not have been difficult at that time for the defendant to recall his whereabouts at the time when the crimes were committed. The court further found that there was no suggestion by the defendant that his attorney was at fault for noncompliance with the prosecution's request and that, accordingly, the defendant alone was culpable for failure to comply with Crim.P. 12.1.

The trial court next considered the second and third factors pertinent to the "good cause" issue—whether and to what extent the nondisclosure prejudiced the prosecution's opportunity to effectively prepare for trial, and whether events occurring subsequent to the defendant's noncompliance mitigated the prejudice to the prosecution. Although the trial court found that it was not until the commencement of trial on November 28, 1978, that defense counsel served the prosecuting attorney with a written notice of alibi and the names and addresses of two alibi witnesses, the prosecution concedes in its brief that the written notice of alibi with the names and addresses of the two alibi witnesses was actually served on the prosecution on November 27, 1978, the day prior to the commencement of jury selection.[2] The trial court further found that the name and address of the third alibi witness was not served on the prosecuting attorney until three days later during trial. It was the trial court's determination that this belated disclosure deprived the prosecuting attorney of any reasonable opportunity to interview the defendant's alibi witnesses prior to or during the trial and further left the prosecution without any opportunity to conduct a proper investigation to discover pos-

---

2. On October 16, 1978, the trial court set the case for trial on November 27, 1978. Jury selection, however, actually commenced on November 28, 1978. The fact that the defendant's alibi

disclosure occurred on the eve of trial, rather than on the first day of jury selection as the trial court erroneously noted, is of no significance to our resolution of this case.

sible rebuttal alibi witnesses. The court accordingly concluded that there was obvious prejudice to the prosecution by the belated disclosure and that there were no events occurring subsequent to the defendant's noncompliance which mitigated that prejudice.

The trial court next addressed whether there was a reasonable and less drastic alternative to the preclusion of the defendant's alibi evidence. Although during argument on remand the defendant suggested that a brief continuance would have afforded the prosecution an opportunity to overcome the prejudice of late disclosure, the trial court was of the view that, in light of the difficulty experienced by the defense investigator in locating the defendant's three alibi witnesses, it would have been even more difficult for the prosecutor to have conducted an investigation for potential rebuttal alibi witnesses. The court determined, therefore, that a brief continuance would not have afforded the prosecution a reasonable opportunity to conduct any appropriate investigation to meet the defendant's alibi evidence.

The trial court concluded that its prior decision to exclude the defendant's alibi evidence was appropriate under the circumstances of this case, and emphasized in its ruling the following additional factors: the defendant's own culpability in failing to provide defense counsel with the requisite information sufficiently in advance of trial to afford the prosecution a reasonable opportunity to conduct the necessary interviews and to undertake a reasonable investigation; the belated disclosure made on the eve of the trial, even though defense counsel apparently knew the names of at least two witnesses some twelve days prior to the commencement of jury selection and failed to communicate that information to the prosecuting attorney; and the obvious practical difficulties in interrupting and continuing a jury trial to some date in the future in order to provide the prosecution with an opportunity for reasonable investigation. Since the court was satisfied that the defendant had failed to establish good cause to permit alibi evidence in spite of his noncompliance with the disclosure require-

ments of Crim.P. 12.1, the trial court reinstated the previously entered judgment of conviction.

## II.

We first review the propriety of the trial court's exclusion of the defendant's alibi evidence pursuant to Crim.P. 12.1. Our review of the trial court's ruling is necessarily circumscribed by the rule that a court's factual findings are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record. *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987); *People v. Raffaelli*, 647 P.2d 230, 236 (Colo.1982); *see also Maine v. Taylor*, 477 U.S. 131, 145, 106 S.Ct. 2440, 2451, 91 L.Ed.2d 110 (1986). Furthermore, a trial court's exercise of its discretionary authority in imposing a sanction for noncompliance with discovery obligations will not be overturned on review unless such decision amounts to an abuse of discretion. *People v. Milton*, 732 P.2d 1199, 1207 (Colo.1987). In order for a reviewing court to conclude that a trial court has abused its discretion with respect to the imposition of a sanction for noncompliance with pretrial discovery obligations, it must be able to say with fair assurance that the trial court's imposition of the sanction was manifestly arbitrary, unreasonable, or unfair. *Id.* It is in light of these aforementioned guidelines that we must evaluate Hampton's arguments directed to the trial court's exclusionary ruling.

## A.

The defendant initially claims that the trial court gave inadequate consideration to the reasons for the belated disclosure of his alibi evidence and also improperly assumed culpability on his part in failing to make timely disclosure. We are unpersuaded by the defendant's argument.

The trial court's findings on remand make clear that it adequately considered the defendant's asserted reasons for the thirteen month delay in disclosure, namely: the alleged complexity of the case; his

movement from one place of incarceration to another during this period of time; and his difficulty in communicating with his lawyer. The trial court found each of these reasons unpersuasive, ruling as follows:

Defendant explains the thirteen month delay in complying with the District Attorney's request for alibi information by the complexity of the case, the difficulties he was experiencing in his personal situation, and the problems he was having in communicating with his attorney. The case itself was not particularly complicated, except for the suppression issues and some difficulties which arose over the question of speedy trial rights. There was some confusion over the suppression matter because of some apparent equivocation on the part of the appellate court, and the speedy trial time computation also presented some difficulties. Defendant, however, fails to persuade this Court that any problems over the suppression issue or difficulties in computing speedy trial time delayed for thirteen months compliance with the People's request for alibi information. At the time the People's formal request was made in September of 1977, only a little over a month had passed since the robbery had occurred, and at that time it should not have been difficult for the Defendant to recall his whereabouts on the day in question. He and he alone was in a position to provide his attorney with that information. There is no suggestion by the defendant that his then attorney was at fault for non-compliance with the People's request, and the Court necessarily concludes that the Defendant alone is culpable for failing to provide that information. Defendant also suggests that because he was in custody and was being repeatedly moved from one place of incarceration to another, he had difficulty communicating with his lawyer. It is true that between September of 1977 and the beginning of November, 1978 Defendant was unavailable for several court appearances in this jurisdiction because he had been moved from the El Paso County Jail to other holding facilities in the state. It is also true, however, that during that period of time Defendant did make ten court appearances with deputy public defenders in this jurisdiction, and one must assume that he had at least ten opportunities to consult with counsel and provide them with this information.

In our prior opinion on this matter, we stated as follows:

[A]n accused will ordinarily know whether he has an alibi defense or not, and, if such a defense exists, the identity of his alibi witnesses. In the absence of some showing establishing the reason for the defendant's unawareness of the identity or location of alibi witnesses, failure to disclose an alibi defense and witnesses until a substantial period of time following service of the prosecution's notice will not be a mitigating circumstance.

*Hampton,* 696 P.2d at 778 n. 13. At the hearing on remand of this case, there was no showing by the defendant that he first became aware of the identity or location of alibi witnesses shortly before the disclosure; nor was there any showing that there existed a justifiable excuse for the defendant's noncompliance with Crim.P. 12.1. The trial court gave adequate consideration to the defendant's asserted reasons for noncompliance and did not err in concluding that "the Defendant alone is culpable" for failing to timely provide the prosecution with his alibi evidence.

### B.

■ The defendant also contends that there was no factual basis to support the trial court's determination that the prosecution suffered prejudice as a result of the late disclosure of the alibi evidence. We reject this contention.

The record clearly establishes that the defendant's alibi witnesses were not disclosed to the prosecution until November 27, 1978, that the prosecution's investigator could not locate and interview these witnesses until the last day of the prosecution's case-in-chief, and that the prosecuting attorney had no opportunity to speak to any of the witnesses. A belated alibi dis-

closure, such as the one in this case, places the prosecution at a substantial disadvantage in preparing for and properly meeting the proposed alibi testimony. *See State v. Christensen*, 323 N.W.2d 219 (Iowa 1982); *State v. Roberts*, 226 Kan. 740, 602 P.2d 1355 (1979).

Although the defendant, at the conclusion of the prosecution's case-in-chief, requested the trial court to continue the trial in order to permit the prosecution to investigate the alibi defense, the prosecuting attorney opposed such a continuance on the basis that it would break the continuity in the evidence and seriously impair the recall ability of the jurors in resolving the case. The prosecution's opposition to a continuance was obviously in the interest of avoiding the prospect of its evidence growing stale during the period prior to the resumption of the trial, with the result that the jurors' recollection of the precontinuance testimony would quickly diminish and the persuasive impact of such evidence would lose much of its force. *See Christensen*, 323 N.W.2d 219; *Commonwealth v. Fernandez*, 333 Pa.Super. 279, 482 A.2d 567 (1984); Epstein, *Advance Notice of Alibi*, 55 J.Crim.L., Criminology & Political Science 29, 35–36 (1964).

We recognize that under some circumstances a brief continuance might well eliminate any prejudice to the prosecution resulting from a defendant's violation of discovery obligations. A court would be hard put to conclude in this case, however, that a mid-trial continuance at the end of the prosecution's case-in-chief would either have ameliorated the difficulties caused to the prosecution by the defendant's belated disclosure or have enhanced the quality and overall reliability of the factfinding process. The state of the record in this case, especially when viewed in light of the obvious potential for prejudice inherent in the failure to timely disclose alibi witnesses, fully supports the trial court's determination that the defendant's last minute disclosure severely hampered the prosecution in its ability to meet the defendant's alibi evidence.

### C.

█ The defendant next argues that the trial court did not adequately consider less drastic alternatives to exclusion, such as, for example, a contempt citation or a ruling permitting prosecutorial comment to the jury concerning the defendant's noncompliance with the disclosure requirements. Again, we find this argument lacking in merit.

The district court was not obliged to consider all conceivable alternatives to exclusion, but rather was obliged to determine "whether there is a *reasonable* and less drastic alternative" that could substantially reduce the prejudice to the prosecution's case caused by the defendant's noncompliance with Crim.P. 12.1. *Hampton*, 696 P.2d at 778 (emphasis added). The defendant's proposed alternatives to exclusion would not serve the obvious purposes that timely disclosure seeks to achieve, namely: to provide the prosecution with information necessary for adequate preparation for trial; to reduce the possibility of surprise and concomitant delays at trial; and to enhance the overall reliability of the factfinding process. *Id.* at 777 (citing *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973), and *Williams v. Florida*, 399 U.S. 78, 81, 90 S.Ct. 1893, 1895, 26 L.Ed.2d 446 (1970)). Crim.P. 12.1 advances these objectives by requiring the trial court, in cases where the defendant fails to make the disclosures required by the rule, to exclude the defendant's alibi evidence "unless the court is satisfied upon good cause shown that such evidence should be admitted." The trial court in this case gave adequate consideration to reasonable and less drastic alternatives to exclusion in its ruling on remand.

### D.

█ In light of our remand order authorizing the trial court to consider any other relevant factors arising out of the circumstances of the case, the defendant argues that the prosecution waived any objection to his violation of Crim.P. 12.1 by not objecting to the alibi evidence immediately upon being served with the names and ad-

dresses of two alibi witnesses on November 27, 1978, and instead waiting until the conclusion of the prosecution's case-in-chief to raise the objection. We find this argument untenable.

To be sure, a party is required to make a specific and contemporaneous objection to evidence believed inadmissible, and the failure to do so will constitute a waiver of any arguable basis for exclusion. *E.g., People v. Taggart*, 621 P.2d 1375, 1386 (Colo.1981); *Donaldson v. People*, 33 Colo. 333, 337–38, 80 P. 906, 907 (1905). In this case, however, there is no basis whatever to support a waiver. When defense counsel disclosed the names and addresses of the two alibi witnesses on November 27, 1978, the prosecution had no prior opportunity to interview these witnesses and to assess the potential damage to its case caused by the late disclosure. Moreover, the third alibi witness was only disclosed at the approximate conclusion of the prosecution's case-in-chief. The prosecution's objection was practically simultaneous with the completion of the defendant's disclosure and was made immediately prior to that phase of the trial at which the defendant intended to call the alibi witnesses.

The cases relied on by the defendant for his argument are clearly distinguishable from the facts present here. In *Hackett v. Mulcahy*, 493 F.Supp. 1329 (D.N.J.1980), for example, the prosecution had received notice of the defendant's alibi defense several months before trial, did not object to defense counsel's opening statement to the jury concerning alibi evidence, expressed indifference as to whether alibi witnesses were called, and did not object to the alibi evidence until a later point in the trial when the defense was well into its case. Under these circumstances, the court held that the prosecution's objection was untimely. Similarly, in *State v. Mitchell*, 149 N.J.Super. 259, 373 A.2d 700 (1977), the prosecution had six months notice of the alibi defense, but waited until after the commencement of the trial to object, thereby lulling the defendant into believing that the prosecution had no objection whatever to this evidence. In contrast to the facts of those cases, at no time did the prosecution in the instant case lull the defendant into believing that it had no objection to the alibi evidence. Upon resting its case, the prosecution made known to the court that it was objecting to the defendant's recently disclosed alibi evidence because of the defendant's failure to comply with Crim.P. 12.1. The prosecution's objection was both specific in content and contemporaneous with the defendant's evidentiary offer.

In summary, the record before us adequately supports the trial court's determination that the defendant failed to establish good cause to admit the testimony of his alibi witnesses, and such determination cannot be characterized as manifestly arbitrary, unreasonable, or unfair. We therefore conclude that the trial court did not abuse its discretion in imposing the sanction of exclusion with respect to the defendant's alibi witnesses.

## III.

We turn to the defendant's claim that Crim.P. 12.1 was applied against him in an unconstitutional manner so as to preclude him from presenting evidence in his defense in violation of the Sixth and Fourteenth Amendments to the United States Constitution and article II, sections 16 and 25 of the Colorado Constitution. We find this claim devoid of merit.

We held in our prior decision that Crim. P. 12.1 is not facially unconstitutional, and that the exclusion of untimely disclosed alibi evidence "is, in the absence of a showing by the defendant of good cause to admit the evidence in spite of his breach of the disclosure obligation, a manifestly reasonable sanction." *Hampton*, 696 P.2d at 775. The important goals of the disclosure requirement would face little prospect of achievement if sanctions were not available for noncompliance. *See id.;* Advisory Committee Note to Rule 12.1, *Proposed Amendments to Federal Rules of Criminal Procedure for the United States District Courts*, 62 F.R.D. 271, 294 (1974). Although the sanction of exclusion is undeniably a severe one, there nonetheless are circumstances in which an alternative sanc-

tion might very well perpetuate rather than limit the prejudice to the prosecution and thus aggravate the very harm to the fact-finding process which the disclosure requirement seeks to avoid. *See Taylor v. Illinois*, —— U.S. ——, 108 S.Ct. 646, 655, 98 L.Ed.2d 798 (1988).[3]

While we acknowledge that the right of an accused to call alibi witnesses in defense of a criminal charge is a fundamental component of due process of law, *Hampton*, 696 P.2d at 774, nothing in the United States or Colorado Constitutions entitles a defendant to await the end of the prosecution's case-in-chief before announcing an alibi defense. *See Williams v. Florida*, 399 U.S. 78, 85, 90 S.Ct. 1893, 1898, 26 L.Ed.2d 446 (1970); *Hampton*, 696 P.2d at 774. The alibi disclosure requirement does not prevent an accused from exercising the right to present a defense, nor does it restrict the nature and content of alibi evidence. *Id.* Rather what the requirement

does "is to condition the presentation of alibi evidence on a timely pretrial disclosure, so that the surprise and prejudice incident to the eleventh-hour introduction of the alibi defense into the trial may be avoided and the reliability of the factfinding process correspondingly enhanced." *Id.*

In light of the trial court's ruling on remand—especially its determination that the defendant alone was culpable in failing to disclose his alibi witnesses in a timely manner and its additional determination that unavoidable prejudice to the prosecution would have resulted from a mid-trial continuance—we are satisfied that the exclusion sanction applied by the trial court had its source and cause in the defendant's violation of the disclosure requirements of Crim.P. 12.1 and that such sanction was not applied in a manner that deprived the defendant of any constitutionally protected interest.[4]

---

3. In *Taylor v. Illinois*, —— U.S. ——, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the United States Supreme Court rejected a Sixth Amendment challenge, predicated on the Compulsory Process Clause, to the trial court's exclusion of a defense witness' testimony as a sanction for defense counsel's failure to timely respond to the prosecution's pretrial discovery request for the identity of defense witnesses. The Illinois Supreme Court Rule 413(d) involved in *Taylor* was a general discovery rule, rather than an alibi rule, and required defense counsel to disclose, subject to constitutional limitations and within a reasonable time after the filing of a written discovery request by the prosecution, the names and addresses of all persons whom the defendant intended to call as witnesses. The Court held that, under the facts of the case, the inference that the defense attorney "was deliberately seeking a tactical advantage is inescapable" and thus warranted the exclusion sanction. *Id.* 108 S.Ct. at 656. The Court noted that, while alternate sanctions might well be adequate in most cases, "there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process." *Id.* at 655.

One of the arguments raised in *Taylor* was that the sanction of excluding testimony should not be applied when the defendant is not personally responsible for the discovery violation. The Court rejected that argument:

> In responding to discovery, the client has a duty to be candid and forthcoming with the lawyer, and when the lawyer responds, he or she speaks for the client. Putting to one side

the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision to forgo cross-examination, to decide not to put certain witnesses on the stand, or to decide not to disclose the identity of certain witnesses in advance of trial. In this case, petitioner has no greater right to disavow his lawyer's decision to conceal Wormley's identity until after the trial had commenced than he has to disavow the decision to refrain from adducing testimony from the eyewitnesses who were identified in the Answer to Discovery. Whenever a lawyer makes use of the sword provided by the Compulsory Process Clause, there is *some risk that he may wound his own client.*

*Id.* at 657. The instant case provides more compelling support for upholding the trial court's sanction of exclusion, in that the trial court expressly found that the defendant himself was responsible for violating the timely disclosure requirement for alibi evidence.

4. We note that the defendant relies for much of his argument on decisions from other jurisdictions which have held the exclusion sanction to be unconstitutionally applied in the circumstances of the cases there presented. Our reading of those cases, however, convinces us that their facts presented much less compelling sets of circumstances for exclusion than those present here. *See, e.g., Braunskill v. Hilton*, 629 F.Supp. 511 (D.N.J.) (prosecutor informed orally of alibi more than two weeks before trial; *notice filed and served six days prior to trial*; prosecutor interviewed alibi witness four days prior to trial), *aff'd*, 808 F.2d 1515 (3d Cir.1986);

### IV.

The defendant next argues that the trial court violated due process of law by denying his request for a continuance predicated on his attorney's alleged unpreparedness. We briefly review the facts pertinent to this issue.

### A.

On October 16, 1978, when the trial was set for November 27, 1978, the defendant moved for a continuance of the trial to late January of 1979, stating that he could not be prepared for trial before that date due to the possibility of filing other motions and the complexity of the case. The defendant's stated position was that any waiver of his speedy trial rights would be expressly contingent upon the court's granting the continuance. The district attorney, in opposition to the continuance, argued that discovery and preparation for trial were nearly completed when the case was originally set for trial almost a year previously, that the case was not particularly complicated, and that the five weeks remaining prior to the trial date on November 27, 1978, provided ample opportunity for adequate trial preparation. The trial court ruled that a prompt and firm trial date should be set and denied the defendant's request for a continuance.

On November 28, 1978, immediately prior to the commencement of jury selection, the defendant again moved for a continuance, citing his desire to seek appellate review of the court's denial of his motion to dismiss the case on speedy trial grounds, his attorney's lack of opportunity to respond to a prosecutorial request for handwriting examplars, his loss of contact with a possible defense witness, and his recent awareness of previously undisclosed police reports and related witnesses. The trial court again heard argument and denied the motion. It ruled that the speedy trial issue could be addressed on appeal in the event of a conviction, that defense counsel's alleged loss of contact with a possible witness was not a cause for further delaying the trial, and that the request for handwriting exemplars, police reports, and witnesses related to a body of evidence which had been made available to the defense from the outset.

### B.

A motion for continuance is addressed to the sound discretion of the trial court, and the trial court's ruling will not be disturbed in the absence of an abuse of discretion. *People v. Mann*, 646 P.2d 352, 358 (Colo.1982); *Miller v. People*, 178 Colo. 397, 400, 497 P.2d 992, 993 (1972). Of course, an unreasoning and arbitrary insistence upon a trial date in the face of a justifiable request for delay can amount to an abuse of discretion and, under some circumstances, a violation of an accused's right to the effective assistance of counsel. *See Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–1617, 75 L.Ed.2d 610 (1983). There are no mechanical tests for determining whether the denial of a continuance constitutes an abuse of discretion. "The answer must be found in the circum-

*State v. Smith*, 140 Ariz. 355, 681 P.2d 1374 (1984) (prosecutor aware of existence and name of undisclosed alibi witness because of witness' relationship to other previously disclosed alibi witness and to previously disclosed alibi defense; witness not previously disclosed because defense attorney believed him to be unavailable); *State v. Smith*, 50 Ohio St.2d 51, 362 N.E.2d 988 (1977) (prosecution knew from police report of existence of three witnesses and the critical nature of their testimony to defendant's alibi defense). Moreover, many of the cases relied on by Hampton involved noncompliance with general discovery rules rather than with notice-of-alibi rules such as Crim.P. 12.1. Because of the tendency of unexpected alibi defenses to cause unfair surprise and lengthy trial delays, as well as "the ease with which an alibi can be fabricated," *Williams v. Florida*, 399 U.S. 78, 81, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970), cases dealing with general rules of criminal discovery do not necessarily apply to notice-of-alibi rules. *See, e.g., Fendler v. Goldsmith*, 728 F.2d 1181, 1190 n. 19 (9th Cir.1983) (expressly separating from its analysis of general criminal discovery rules the federal notice-of-alibi rule, "which is a rule designed to deal with particular types of evidence"); *see also Taylor v. Illinois*, —— U.S. ——, 108 S.Ct. 646, 667–68, 98 L.Ed.2d 798 (1988) (Blackmun, J., dissenting) (distinguishing between effect of state's legitimate interests on permissible sanctions for noncompliance with general reciprocal-discovery rules and for noncompliance with "rules designed for specific kinds of evidence as, for example, a notice-of-alibi rule.").

stances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964); *see also David v. Attorney General,* 699 F.2d 411, 415 (7th Cir.), *cert. denied,* 464 U.S. 832, 104 S.Ct. 113, 78 L.Ed.2d 114 (1983); *Miller,* 178 Colo. at 400, 497 P.2d at 993.

The total circumstances manifested by the record in this case, including the defendant's asserted reasons for the requests and the trial court's reasons for denying those requests, provide substantial support for the court's rulings. In short, the record not only refutes any notion of arbitrary judicial action but also dispels any allegedly concomitant due process violation.

### V.

■■■ The defendant's last claim is that the jury instruction on recent and unexplained possession of property denied him due process of law. We are unpersuaded by his argument.

### A.

The jury instruction (Instruction number 21) states as follows:

> You are instructed that the exclusive possession by the Defendant of stolen property recently after an aggravated robbery serves to create an inference or incriminating circumstance that the Defendant took such property and that such evidence[,] if established beyond a reasonable doubt, is sufficient in and of itself to justify finding beyond a reasonable doubt that the Defendant was in fact the person who took the property in the absence of a reasonable explanation to the contrary derived from the evidence in the case. You must, of course, find each and every element of each of the crimes charged, including identity, in order to find the Defendant guilty.

The defendant objected to this instruction on the ground that it unduly highlighted the element of "exclusive recent possession" by telling the jury that such evidence was sufficient by itself to support a guilty verdict. In addition, the defendant requested the court to add a sentence telling the jury to consider all the evidence in the case, and further requested the court to substitute the word "inference" for "explanation" so as to remove any suggestion that it was incumbent upon the defendant to explain his possession of the property. The trial court denied these requests.

### B.

In *Wells v. People,* 197 Colo. 350, 592 P.2d 1321 (1979), we reversed the defendant's conviction for aggravated robbery and conspiracy to commit aggravated robbery on the basis of the trial court's failure to instruct the jury on the elements of aggravated robbery. In the course of the opinion, we considered the propriety of instructing the jury on the effect of unexplained and exclusive possession of property recently taken in a robbery. In *Wells,* the trial court instructed the jury that if they found beyond a reasonable doubt that the property taken during the alleged robbery was shortly thereafter found in the exclusive possession of the defendant, then

> his possession serves to create an inference or incriminating circumstance that the defendant participated in the robbery and that such evidence, if established beyond a reasonable doubt, can be sufficient in and of itself to justify a verdict of "Guilty" for the charge of robbery in the absence of an explanation derived from the evidence in the case, raising a reasonable doubt as to the defendant's guilt.

197 Colo. at 353, 592 P.2d at 1324. While we found it unnecessary in that case to determine whether the alleged inadequacy in the instruction would require reversal on due process grounds, we stated that the better procedure is to inform the jury in the same instruction of the following matters: that the unexplained and exclusive possession of recently stolen goods creates only an inference that the possessor was the robber; that the weight to be given the inference rests entirely with the jury; that the longer the period of time between the robbery and the evidence of possession, the

weaker is the inference which may be drawn from the evidence of possession; that the evidence of the defendant's possession of recently stolen property does not shift the burden of proof, which remains on the prosecution to prove every element of the crime beyond a reasonable doubt; and that the defendant is not required to take the witness stand or to furnish any explanation whatever of his possession. 197 Colo. at 355, 592 P.2d at 1325. In *Wells*, we prohibited the prospective use of the jury instruction given in that case and appended to our opinion a recommended instruction for use in future jury trials.

Unlike the instruction in *Wells*, the instruction given here expressly admonished the jury that "[y]ou must, of course, find each and every element of each of the crimes charged, including identity, in order to find the Defendant guilty." Furthermore, the challenged instruction did not tell the jury that the defendant's possession of the stolen property created an inference that the defendant participated in the robbery, as did the instruction in *Wells*, but rather informed the jury that the defendant's unexplained possession of the property served to create an inference that the defendant "took such property." The crime of aggravated robbery, as charged against the defendant, required proof not only that the defendant knowingly took money from the person or presence of the victim but also that the defendant was armed with a deadly weapon and either had the intent, if resisted, to kill, maim, or wound the victim or any other person, or knowingly put the person robbed or any other person in reasonable fear of death or bodily injury by the use of force, threats, or intimidation with the deadly weapon. *See* § 18–4–302, 8 C.R.S. (1973). While the challenged instruction informed the jury that the defendant's recent and unexplained possession of the stolen property

could serve as the basis for an inference that the defendant took the money, it did not, in contrast to the instruction in *Wells*, tell the jury that such recent and unexplained possession could also serve as the basis for inferring the other essential elements of the crime of aggravated robbery and thus could be sufficient in and of itself to justify a guilty verdict to aggravated robbery.

Moreover, other instructions tendered to the jury in this case mitigated any possible confusion stemming from the challenged instruction. The jury, for example, was expressly informed that "[n]o single one of these instructions states all the law applicable to the case, but all of these instructions must be taken, read and considered together, as they are connected with and related to each other as a whole." Separate instructions informed the jury of the presumption of innocence and the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt as to all the elements of any crime. An additional instruction admonished the jury that the defendant was under no obligation to testify and that his election not to testify should not be taken or considered by the jury as any evidence of his guilt or innocence. The jury was also instructed on the elements of the crime charged and on any lesser included offenses, including the requisite culpable mental states for each such offense, and, by separate instruction, was told that the prosecution bore the burden of proving beyond a reasonable doubt not only each element of any crime submitted to the jury, but also the identity of the defendant as the perpetrator of that particular offense.[5]

### C.

While we acknowledge that the better procedure would undoubtedly have been to include in the instruction on recent and

---

**5.** Any likely confusion from the trial court's instruction was further lessened by the trial court's decision to instruct the jury, over the prosecution's objection, on the lesser offense of theft by receiving. *See* § 18–4–410, 8 C.R.S. (1973 & 1975 Supp.). The trial court instructed the jury that if they found that the defendant exercised recent and unexplained possession over the stolen property but were not convinced that the defendant actually participated in the robbery, then the jury could consider whether the defendant was guilty of theft by receiving. The jury, having returned a guilty verdict to aggravated robbery, found the defendant not guilty of theft by receiving.

unexplained possession a detailed summary of those additional factors specifically emphasized in *Wells*, the trial of this case occurred prior to our decision in *Wells* and the *Wells* decision was expressly limited to prospective application only.[6] Jury instructions must be read and considered in their entirety, *see Davis v. People*, 112 Colo. 452, 456, 150 P.2d 67, 70 (1944), and the jury was so informed in this case. We are satisfied that the language of the challenged instruction on recent and unexplained possession, when considered in the context of the other instructions given to the jury, did not violate due process of law or otherwise amount to reversible error.

The judgment of conviction is accordingly affirmed.

---

6. The defendant argues that the United States Supreme Court's recent holding in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987)—that any "new rule" of constitutional procedure for the conduct of criminal prosecutions is to be applied retroactively to all criminal cases pending on direct review or not yet final—obliges this court to retroactively apply *Wells* to this case. *Wells*, however, did not announce a constitutional rule of criminal procedure, but rather was a nonconstitutional decision prospectively prohibiting the use of the jury instruction given in that case. Accordingly, *Griffith* does not require a retroactive application of *Wells*.