24CA1304 Peo v Henderson 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1304
El Paso County District Court No. 23CR4274
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Robert Neal Henderson,

Defendant-Appellee.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE KUHN
J. Jones and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Michael J. Allen, District Attorney, Doyle Baker, Senior Deputy District
Attorney, Tanya A. Karimi, Deputy District Attorney, Amanda Byrne, Deputy
District Attorney, Colorado Springs, Colorado, for Plaintiff-Appellant

The Bussey Law Firm, P.C., Timothy R. Bussey, Colorado Springs, Colorado,
for Defendant-Appellee

¶ 1 The People appeal the district court's order dismissing their case against defendant, Robert Neal Henderson, entered after the court denied the prosecutor's request to continue trial. We reverse and remand the case to the district court for further proceedings consistent with this opinion.

## I. Background

¶ 2 Early one morning in September 2023, an alleged domestic violence altercation occurred between Henderson and his girlfriend, J.B. (the victim). According to the probable cause affidavit for his arrest, Henderson took the victim's personal belongings and physically attacked her when she attempted to leave his residence. During the incident, Henderson grabbed the victim by the neck, causing her to "black[] out for approximately one minute"; threw her on the ground several times and "into a railing where she hit her head and saw stars"; and "punched her five or more times in the face." The responding officer observed that the victim's right eye was swollen shut and "had turned a purplish color," she had a large welt on her right temple, and she had another large welt on the right side of her head.

1

¶ 3     The prosecution charged Henderson with felony second degree assault and three misdemeanor offenses: third degree assault, harassment, and false imprisonment. *See* § 18-3-203(1)(i), (2)(b), C.R.S. 2024 (class 4 felony second degree assault); § 18-3-204(1)(a), (3), C.R.S. 2024 (class 1 misdemeanor third degree assault); § 18-9-111(1)(a), (2)(a), C.R.S. 2024 (class 1 misdemeanor harassment); § 18-3-303(1), (2), C.R.S. 2024 (class 2 misdemeanor false imprisonment). Henderson pleaded not guilty on January 2, 2024, and the district court set trial for April 23, roughly two and a half months before the expiration of his six-month statutory speedy trial period.

¶ 4     In connection with this trial date, the court conducted pretrial readiness conferences on April 1 and April 22. On both occasions, the prosecutor said that she wasn't ready to go to trial because she hadn't been able to serve the victim with a subpoena to testify at trial. Specifically, during the April 22 conference, the prosecutor told the district court that a process server had been attempting to serve the victim. But while the process server had "some communication with [the victim] regarding meeting to receive the subpoena," he hadn't been able to meet with her. The prosecutor

2

said that it was unclear whether the victim had told the process server that she was available at times when she wasn't really available "and [was] kind of trying to evade service that way." Over Henderson's counsel's objection, the court granted the prosecutor's request for a continuance and reset trial for June 4.

¶ 5    The victim was personally served on May 15 with a subpoena to appear at trial, and both parties announced their readiness to proceed during a June 3 pretrial readiness conference. However, the victim didn't appear on the morning of trial. The prosecutor asked the district court to issue a bench warrant for the victim's arrest but stay its execution until the next morning. She also asked the court to continue the trial for one day. Alternatively, she asked the court to impanel the jury as originally planned but to delay the presentation of evidence until the next morning. The district court denied the prosecutor's requests. And after the prosecutor indicated to the court that she couldn't prove her case without the victim's testimony, the court dismissed the case at Henderson's counsel's request.

## II. Analysis

¶ 6 The People contend that the district court erred by denying the request for a continuance and then dismissing the charges against Henderson. The People also contend that the court should have issued a bench warrant and considered the effect of the warrant on the circumstances pending before it. We agree with these contentions and, therefore, reverse.

### A. Standard of Review and Applicable Law

¶ 7 We review a district court's denial of a motion to continue trial for an abuse of discretion. *People v. Ahuero*, 2017 CO 90, ¶ 11. To the extent the court's decision here involved the interpretation of a rule of criminal procedure, we review that question de novo "employing the 'same interpretive rules applicable to statutory construction.'" *People v. Bueno*, 2018 CO 4, ¶ 18 (quoting *People v. Corson*, 2016 CO 33, ¶ 44).

¶ 8 A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misunderstanding or misapplication of the law. *People v. Senette*, 2018 COA 105, ¶ 8. "[A]n unreasoning and arbitrary insistence upon a trial date in the face of a justifiable request for delay can

4

amount to an abuse of discretion . . . ." *People v. Hampton*, 758 P.2d 1344, 1353 (Colo. 1988).  But "[t]here are no 'mechanical tests' for determining whether a trial court abuses its discretion by denying a continuance." *People v. Brown*, 2014 CO 25, ¶ 20 (quoting *Hampton*, 758 P.2d at 1353).  Rather, we consider the totality of the circumstances of the case.  *Id.*  In doing so, we must evaluate the circumstances confronting the court at the time the motion to continue was filed, including the reasons underlying the motion.  *Ahuero*, ¶ 11.  "When the continuance is sought to locate a missing witness, the court may consider whether the movant exercised due diligence to secure the witness's attendance." *Senette*, ¶ 9.  Other factors relevant to our inquiry are the prejudice that the movant would suffer from the denial of the continuance, whether the continuance would cure that prejudice, and the potential prejudice to the nonmoving party if the continuance were granted.  *Id.*

¶ 9    Even if a district court abuses its discretion by denying a motion to continue, the movant must also "demonstrate actual prejudice arising from [the] denial of the continuance." *People v. Garrison*, 2017 COA 107, ¶ 21 (quoting *People v. Denton*, 757 P.2d

637, 638 (Colo. App. 1988)). Otherwise, the error is harmless and therefore doesn't warrant reversal. *See People v. Hagos*, 2012 CO 63, ¶ 12 ("[W]e review nonconstitutional trial errors that were preserved by objection for harmless error."); Crim. P. 52(a).

### B. Additional Background

¶ 10 As noted above, the district court held a pretrial readiness conference on June 3. The prosecutor informed the court that the victim had been personally served with a subpoena to appear at trial the next day and that the prosecution was ready to proceed.

¶ 11 However, the victim failed to appear in court on the morning of trial and wasn't responding to the victim advocate's calls and messages. The prosecutor informed the court that she was nonetheless expecting the victim to testify in the case because the victim was under a subpoena. The prosecutor said that while she "had initially not been in good communication with [the victim], . . . [she] was able to get [the victim] on the phone [the day before the trial]." During that conversation, the prosecutor provided information regarding the place and time of trial, and the victim confirmed that she intended to come to court. The prosecutor

noted that the victim was aware that there was "always a potential [that] the [c]ourt could issue a warrant if she [didn't] show [up]."

¶ 12     Then, the prosecutor requested a bench warrant with a stay of execution until the next morning and a short one-day continuance. She explained that Henderson's speedy trial deadline was set to expire on July 2, and June 25 was the only other available trial setting within that deadline.

¶ 13     The court clarified that June 25 wasn't available because a reverse transfer hearing in an unrelated matter had been set for that day. The court clerk also said that the jury commissioner had indicated that if the court were to continue the trial until June 5 as requested by the prosecutor, jury selection wouldn't be guaranteed because the jury pool for that day was smaller than usual and there were three county court cases on the docket scheduled to call jurors before Henderson's case. Specifically, the clerk said,

> We would have to wait till those judges pick their jurors, and then we will get whatever that is left over if there's any left over or if, you know, their trial goes away. So we will have to wait to see the results for the other judges first before we can get a panel for tomorrow.

¶ 14    In response to this information, the prosecutor asked to move forward with picking a jury that morning, but starting the presentation of evidence the next morning, at which time the stayed bench warrant for the victim could also be addressed.  In support, the prosecutor reiterated that the victim had been personally served with a subpoena and that she had spoken with the victim just recently.

¶ 15    The district court denied this specific request:

> We were set for trial on April 1.  Defense was ready.  People were not ready because they didn't have [the victim] served.  So we set it over to April 22[].  We were ready for trial on April 22[], and the People, again, had made efforts to serve [the victim] and were unable to do so, and we set it over for trial today.
>
> The . . . Court finds [that] the People certainly have been trying to gain the cooperation of [the victim] but are unable to do so.  We've now been waiting over an hour for her to appear, for her to return your . . . victim advocate['s] call to say, I'm sorry.  I slept in.  I had an emergency.  I need an accommodation, and that hasn't happened.

¶ 16    Additionally, the court was concerned that granting the prosecution's request would be an inconvenience to jurors:

> And so we're set for trial today, and the Court of Appeals may disagree with me.  They may

8

think it's a de minimis concern that I think it's important that I not call jurors up here and take two days of their time to serve as jurors without anything more than the hope that [the victim] is going to appear.

¶ 17 Finally, the district court also denied the prosecutor's renewed request that the entire trial be pushed back one day:

> Well, I don't have . . . a trial pool for tomorrow. We summoned our pool for today, and so what I've been told is that we can wait until the county court has gone through their pool, see if . . . we could bring in a pool. We may or may not be able to.
>
> But, again, now we've pushed the trial back a day, and I have to get this trial done by Friday[, June 7]. [During the June 3 pretrial readiness conference, the prosecutor] told me this was a three-[day], possibly four-day trial with deliberations. I can't accommodate that.

The court summarized its decision to deny a continuance as follows:

> We don't have a [jury] pool available. So, again, the plan is we're going to hope for a jury pool. We're going to hope for [the victim] cooperating with a court ordered subpoena. Hope is not a plan that I can make decisions on, and the request is denied.

## C. The District Court Erred by Denying the Prosecutor's Continuance Request and Dismissing the Case

¶ 18    The People contend that the district court erred by "denying the prosecution's request to continue trial for [the] unavailable [victim-]witness because [the court] failed to issue a bench warrant as required under the rules of criminal procedure and because it failed to weigh the effect the bench warrant would have [had] in gaining the witness's presence for trial." In advancing this argument, the People direct our attention to *Senette*.

¶ 19    In that case, the trial court denied the prosecutor's request for a one-week continuance and dismissed the charges against Senette after the victim-witness failed to appear at trial. *Senette*, ¶¶ 2, 4. On the prosecution's appeal, a division of this court reversed the dismissal order and remanded for reinstatement of the charges. *Id.* at ¶ 24. The division concluded that the trial court abused its discretion by denying the prosecutor's continuance request because that ruling was arbitrary and based on the court's misapplication of the law. *See id.* at ¶¶ 10-19.

¶ 20    Specifically, "[i]t was arbitrary for the trial court to deny the requested continuance without recognizing the prosecutor's

10

diligence in attempting to procure [the witness's] attendance at trial." *Id.* at ¶ 10. Indeed, the division observed, "the prosecutor and the prosecution's investigators knew where [the witness] lived and worked; had been in contact with [the witness] by phone and text message throughout the case, including on the morning of trial; and had personally served her with a subpoena to attend trial." *Id.*

¶ 21 The *Senette* court concluded that the trial court misapplied the law when it failed to grant the prosecutor's request for a bench warrant and when it determined that a continuance would "do little to procure [the witness's] attendance at trial without placing any weight on the fact that an active bench warrant during the period of any continuance would help compel [the witness's] attendance and make it far more likely she would appear at the rescheduled trial." *Id.* at ¶¶ 12, 15. Finally, the division concluded that the trial court's denial of a continuance was arbitrary because while the court concluded that the requested continuance would prejudice Senette, the court didn't consider that the prosecution would be unable to prove its case without the witness whose testimony was essential to the case, and whose attendance the prosecution could have compelled with a bench warrant. *Id.* at ¶¶ 16, 19.

¶ 22    We agree that the rationale from *Senette* applies to this case. We conclude that the district court abused its discretion by denying a one-day continuance because the court (1) misapplied the law by not issuing a bench warrant for the victim's arrest and (2) failed to consider the facts suggesting that the continuance was warranted.

1.    The District Court Misapplied the Law in Handling the Prosecutor's Request for Issuance of a Bench Warrant

¶ 23    When a subpoenaed witness doesn't appear at trial, the court, at the request of the subpoenaing party, "*shall* issue a bench warrant directing that any peace officer apprehend the person and produce the person" for trial.  Crim. P. 17(h)(2)(A) (emphasis added).

¶ 24    Here, when the subpoenaed victim failed to appear on the morning of trial, the prosecutor asked the court three times to issue a bench warrant.  Yet the district court never explicitly addressed those requests — let alone issued a bench warrant — before denying a continuance and dismissing the case against Henderson. Consequently, the court misapplied the law because the plain language of Rule 17(h)(2)(A) required the court to issue a bench warrant.  *See Senette*, ¶ 12 n.1 ("[The rule] does not give a trial court discretion to issue a warrant to compel the attendance of a

12

properly served witness."); *People v. Huckabay*, 2020 CO 42, ¶ 16
("[T]here is a presumption that the word 'shall' when used in a
statute is mandatory." (quoting *Mook v. Bd. of Cnty. Comm'rs*, 2020
CO 12, ¶ 80)).

¶ 25    True, while *Senette* involved a request for an active bench
warrant, the prosecutor here requested a warrant with its execution
stayed for one day.  Nonetheless, we're not persuaded by
Henderson's argument that "[b]y asking for a stayed bench warrant
and not an active warrant, the [prosecutor] was literally *waiving* any
of the process and remedies offered by [Rule 17(h)(2)]."  In essence,
Henderson posits that Rule 17(h)(2) didn't apply to the prosecutor's
request because the specific remedy that she sought wasn't
"authorized" by that provision.

¶ 26    But Henderson cites no authority supporting the sweeping
proposition that a request for a stayed bench warrant seeks a
separate and distinct remedy outside the ambit of Rule 17(h)(2),
precluding the prosecutor from obtaining a warrant under that rule.
In any event, the prosecutor here repeatedly asked for the issuance
of a bench warrant for the victim.  Under Rule 17(h)(2), absent
exceptions not applicable here, the district court had to grant that

request.  Nothing in the rule precluded the court from staying any issued warrant until the next morning; to the contrary, other courts have granted that exact relief.  *See, e.g.*, *People v. Myers*, 969 P.2d 701, 702 (Colo. 1998) (acknowledging in an attorney discipline action that the court in the underlying criminal case stayed a bench warrant for the attorney's arrest).  Finally, there's no indication in the record that the district court had any concern about the effect of the requested stay on its ability to enforce the subpoena under Rule 17(h)(2).  Accordingly, Henderson's argument doesn't alter our conclusion that the court misapplied the law by not issuing the requested bench warrant for the subpoenaed nonappearing witness.

¶ 27     Having reached this conclusion, we now turn to the court's denial of the continuance request itself.

### 2.     The District Court Failed to Fully Examine the Circumstances Before Denying a Continuance

¶ 28     Like the trial court in *Senette*, the district court here erred in its assessment of the factual circumstances surrounding its decision not to continue the case.  For starters, the court denied the prosecutor's request after observing that the trial was initially set for April 1 and that it had already been continued twice, first to

April 23 and then to June 4. However, as explained above, April 23 was the original trial date, and the court *only* conducted a pretrial readiness conference on April 1. During that proceeding, the court reset the pretrial readiness conference to April 22 because the prosecution was still attempting to serve the victim with a subpoena. When the victim still hadn't been served by the reset conference, the court continued the trial to June 4. Thus, to the extent the court determined that a continuance wasn't warranted because Henderson's trial had already been continued twice, that determination is contradicted by the record.

¶ 29    Next, the district court failed to consider certain facts indicating that the requested continuance would have allowed the prosecutor to procure the victim's attendance in court. For example, in noting that the prosecutor had been diligent but ultimately unsuccessful in her attempts "to gain the cooperation" of the victim, the court told the prosecutor that it "sound[ed] like [she] maybe had some difficulty all along" and emphasized that the victim advocate hadn't been able to reach the victim on the morning of trial. But there's no indication that the court considered that the prosecutor had spoken with the victim just the day before. During

that conversation, the prosecutor told the victim that she was required to appear in court the next morning and confirmed the courtroom where the trial would be held. The victim confirmed that she intended to appear at trial and that she knew where to go given that "[s]he had been here once initially in the case to modify the protection order." The prosecutor also informed the court that at the time of the case, the victim worked late nights and it was possible that she had overslept.

¶ 30 More importantly, because the district court declined to first address the prosecutor's request for a bench warrant, the court also didn't consider whether the warrant would make it more likely that the victim would appear at the rescheduled trial. *See Senette*, ¶ 12. After all, the prosecutor knew where the victim lived and was in contact with her. The prosecutor had even warned the victim that the court could issue a bench warrant for her arrest if she failed to comply with her subpoena. Under these circumstances, the district court should have considered whether the requested bench warrant and a one-day continuance would have allowed the prosecutor to use the threat of arrest associated with the warrant to compel the victim's attendance in court.

¶ 31     In arguing otherwise, Henderson again points out that the prosecutor only requested a stayed bench warrant and asserts that this warrant would have been futile given that it would have expired the next day "by operation of law under [Rule 17(h)(2)(A)(ii)] due to cancellation of the trial." But this assertion presumes that only an active bench warrant would have been effective in securing the victim's appearance, and we have already rejected that proposition above. Further, even if the victim were to not appear at the rescheduled trial despite the stayed warrant, that doesn't mean that the prosecutor couldn't ask for further relief from the court. Thus, Henderson's argument that the requested bench warrant would have been "illusory" because the court would have canceled the trial anyway is based on speculation.

¶ 32     This brings us to the People's final argument: the district court abused its discretion by giving more weight to the possible inconvenience to prospective jurors than to the prejudice of dismissal to the prosecution. In evaluating the prosecution's request, the court reasoned that a continuance was improper because the court didn't have a jury pool for the next morning, and regardless, the trial couldn't be completed by June 7, the only

available three-day period in the court's calendar before the end of Henderson's speedy trial deadline the following month.

¶ 33     It's true that the jury commissioner was uncertain whether a jury pool would be available if jury selection was continued to June 5. But while the jury commissioner indicated that there was *no guarantee* that there would be a sufficient jury pool left after the county court docket, there was still a possibility that a jury pool would be available. The district court concluded that this uncertainty meant that continuing the case would be futile because there was no pool from which a panel could be drawn. The court also denied the prosecutor's request for a jury to be selected from a pool summoned for the June 4 trial on the grounds that imposing an extra day of jury duty would be inconvenient to jurors. Thus, the court first declined to impanel a jury from the jury pool that was readily available on the morning of trial and then it denied a continuance because there was a chance that a pool wouldn't be available the next morning.

¶ 34     Likewise, there was considerable uncertainty over whether the trial could be completed by June 7 if the court continued it to June 5. Specifically, after the court noted that it couldn't accommodate

"a three-[day], possibly four-day trial with deliberations," the prosecutor clarified, "[T]he People never said it would be four days. I said it might spill over to the morning of the [third day], but I believe that our testimony would be done by the morning of the second day [i.e., June 6]." The court then said,

> That's what I heard. But what you fail to take into account is the Defense case and [the] time for deliberation[s]. I'm out of the office next week. And so this case would have to end by Friday[, June 7], and . . . from what I understood, [the] parties were expecting, at best, [that] evidence would be concluded on the third day, which would be Friday, if we were to start tomorrow. That's even with starting early in the morning, which we're not going to be able to.

It doesn't appear that the court confirmed with defense counsel the anticipated length of Henderson's case-in-chief. Instead, the court presumed that the presentation of all evidence wouldn't conclude until June 7, and therefore, there wouldn't be enough time left for the jury to deliberate and return a verdict by the end of that day.

¶ 35    We recognize that the court had to balance significant competing interests, including the prosecution's interest in having the victim testify in the case, Henderson's statutory right to speedy trial, the availability of a jury pool, and the court's limited

19

availability. As a general rule, the difficulties inherent in "assembling the witnesses, lawyers, and jurors at the same place at the same time . . . counsel[] against [a] continuance[] except for compelling reasons." *Ahuero,* ¶ 12 (quoting *Morris v. Slappy,* 461 U.S. 1, 11 (1983)). And to be sure, there is nothing wrong with a court considering these types of factors in deciding how to manage its docket. *See People v. Sandoval-Candelaria,* 2014 CO 21, ¶ 26 ("[O]ur cases make clear that trial courts have broad discretion to manage their dockets.").

¶ 36    However, while we can't say that — standing alone — the district court incorrectly weighed the impact of the prosecution's plan on the jurors against the impact on the prosecution's case, these scheduling pressures all appear to have contributed to the court's decision to dismiss the case.

¶ 37    Regardless, this point does not alter the conclusion we reach above: the court misapplied the law by not issuing a bench warrant for the nonappearing subpoenaed victim at the prosecution's request. And at that point, it also should have examined whether the warrant was likely to obtain the victim's presence at trial. Under these circumstances, then, we conclude that the court

abused its discretion by denying the requests for a warrant and a continuance. Given that the error resulted in dismissal of the People's case, we conclude the error was not harmless.[1] We therefore conclude that the charges must be reinstated.

## III. Disposition

¶ 38 The judgment of dismissal is reversed, and the case is remanded to the district court to reinstate the charges against Henderson and to conduct further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE MOULTRIE concur.

---

[1] In his briefing, Henderson contends that because the prosecutor didn't pursue a continuance in accordance with section 18-1-405(6)(g)(I), C.R.S. 2024, the People can't establish that they suffered prejudice as a result of the district court's decision, and additionally, they are precluded from seeking reinstatement of the charges. This argument misses the mark by a wide margin. The record clearly shows that after the court denied a continuance, the court dismissed the charges because the prosecutor couldn't prove her case without the victim's testimony. Indeed, the prosecutor explicitly conveyed that point to the court. So the prejudice to the People is obvious — their charges against Henderson were dismissed as a consequence of the court's decision not to push back the trial for one day. And because these "two decisions simply cannot be separated," the proper remedy on remand is for the court to reinstate the charges. *People v. Senette*, 2018 COA 105, ¶¶ 21, 24.