2013 CO 19

**In Re The PEOPLE of the State of Colorado, Plaintiff**

**v.**

**Bruce J. NOZOLINO, Defendant**

**Supreme Court Case No. 12SA189**

Supreme Court of Colorado.

March 25, 2013

El Paso County District Court Case No. 10CR2496, Honorable Victor I. Reyes, Judge

Attorneys for Plaintiff: Daniel H. May, District Attorney, Fourth Judicial District, Donna J. Billek, Senior Deputy District Attorney, Deborah F. Pearson, Senior Deputy District Attorney, Doyle Baker, Senior Deputy District Attorney, Colorado Springs, Colorado

Attorneys for Defendant: Walta LLC, Mark G. Walta, Denver, Colorado, Tina L. Tussay, Castle Rock, Colorado

Attorneys for Amicus Curiae Office of Alternate Defense Counsel: The Law Office of Jonathan D. Rosen P.C., Jonathan D. Rosen, Denver, Colorado

Attorneys for Amicus Curiae Colorado State Public Defender: Douglas K. Wilson, Public Defender, Frances Smylie Brown, Chief Deputy Public Defender, Denver, Colorado

En Banc

JUSTICE RICE delivered the Opinion of the Court.

¶1 In this original proceeding, Petitioner Bruce J. Nozolino ("Nozolino") seeks to vacate the trial court's order disqualifying the Office of the State Public Defender as counsel for Nozolino. The trial court disqualified the Public Defender, holding that a conflict exists and that the conflict is not waivable. Nozolino petitioned this Court asserting that the trial court abused its discretion when it ordered disqualification of the Public Defender's office. We issued a rule to show cause and now make the rule absolute.

### I. Facts and Procedural History

¶2 This matter arises from the El Paso County District Court's decision on April 20,

2012, to disqualify the Public Defender from continuing to represent Nozolino, defendant in district court action 10CR2496, in which Nozolino is charged with thirty-one counts of homicide-related crimes.

¶ 3 When Nozolino's homicide case began, he filed two applications with the trial court seeking appointed counsel. The trial court determined that Nozolino was indigent, and accordingly appointed Carrie Thompson ("Thompson"), the head of the Public Defender's regional trial office in Colorado Springs, and Rosalie Roy ("Roy") of the Public Defender's regional trial office in Colorado Springs, to represent Nozolino.

¶ 4 Subsequently, the district attorney charged Nozolino with two counts of first-degree perjury in a separate action. The charges arose from information contained in Nozolino's applications for court-appointed counsel in the homicide case. The trial court appointed the Public Defender's office to represent Nozolino in the perjury case as well, but the Public Defender moved to withdraw from that case after the prosecution listed Thompson as a witness in its perjury case. At the same time, Thompson withdrew from representing Nozolino in the homicide case and the Public Defender's office took actions to "wall off" Thompson from the homicide case. Two attorneys from the Public Defender's office, Roy and Kimberly Chalmers ("Chalmers"), continued to represent Nozolino in the homicide case.

¶ 5 At a pretrial hearing in Nozolino's homicide case, the trial court expressed concern over the potential for a conflict of interest if the Public Defender's office continued to represent Nozolino in the homicide case when Thompson was listed as a prosecution witness in the perjury case. After briefing and a hearing on the issue, the trial court ruled that the Public Defender's office had an unwaivable conflict of interest under Colo. RPC 1.7 and 1.9. The trial court based this ruling on the fact that the prosecution designated Thompson as a potential witness in the perjury case and that Thompson supervises Roy and Chalmers. Further, the trial court determined that the conflict should be imputed to the Public Defender's office as a whole pursuant to Colo. RPC 1.11. Nozolino told the trial court that he wanted the Public Defender's office to continue to represent him in the homicide case, but the trial court determined that the conflict could not be waived. Accordingly, the trial court disqualified the Public Defenders from further participation in the case and ordered that Alternate Defense Counsel be appointed to handle the homicide matter.

¶ 6 Nozolino filed a motion seeking reconsideration of the trial court's ruling disqualifying the Public Defenders. The trial court denied the motion. Nozolino was ultimately acquitted of the perjury charge in the proceeding in which Thompson testified.

¶ 7 Nozolino petitioned this Court pursuant to C.A.R. 21 to issue a rule to show cause why the district court's order disqualifying his counsel of choice in the homicide case due to an alleged conflict of interest that the trial court deemed both unwaivable and imputable to the Public Defender's office as a whole should not be disapproved. We issued a rule to show cause and now make that rule absolute.

## II.  C.A.R. 21 Jurisdiction

¶ 8 This Court may exercise its original jurisdiction pursuant to C.A.R. 21 to provide extraordinary relief when appellate review will not provide an adequate remedy. C.A.R. 21. Here, if the trial court's ruling is allowed to stand, Nozolino must proceed with Alternate Defense Counsel representing him rather than his counsel of choice, the Public Defenders. Therefore, it is appropriate for this Court to exercise original jurisdiction over this matter.

## III.  Standard of Review

¶ 9 This Court reviews a trial court's interpretation of a rule of professional conduct de novo because it presents a question of law. *See City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co.*, 239 P.3d 1270, 1275 (Colo.2010) (reviewing the interpretation of a rule of civil procedure de novo).

¶ 10 We also review the trial court's decision to disqualify counsel for a conflict of interest. Trial courts have broad discretion

in deciding whether to disqualify counsel. *People v. Shari*, 204 P.3d 453, 457 (Colo. 2009); *People v. Harlan*, 54 P.3d 871, 877 (Colo. 2002). Accordingly, we review decisions to disqualify counsel for an abuse of discretion. *Shari*, 204 P.3d at 457; *Harlan*, 54 P.3d at 877.

## IV. Analysis

¶ 11 The issue before the Court is whether a conflict of interest exists and, if so, whether that conflict is waivable. To answer these questions, we first discuss disqualification. Then, we review the law regarding waiver of the right to conflict-free representation. We determine, after balancing the interests presented and applying the facts of this case, that if a conflict exists between Roy and Nozolino, or Chalmers and Nozolino, such conflict is waivable.

### A. Disqualification

¶ 12 The right to effective assistance of counsel encompasses the right to conflict-free representation by counsel. *People v. Martinez*, 869 P.2d 519, 524 (Colo.1994) (citing *Holloway v. Arkansas*, 435 U.S. 475, 483–84, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)); *Rodriguez v. Dist. Court*, 719 P.2d 699, 706 (Colo.1986). "The right to the effective assistance of counsel can therefore be violated by 'representation that is intrinsically improper due to a conflict of interest.'" *Dunlap v. People*, 173 P.3d 1054, 1070 (Colo.2007) (quoting *People v. Castro*, 657 P.2d 932, 943 (Colo. 1983)). In the event of a conflict of interest, the attorney may be disqualified from representing the client to safeguard the client's Sixth Amendment rights. *See Shari*, 204 P.3d at 460.

¶ 13 The trial court has the discretion to disqualify an attorney from further representation, however, the court must take into account the importance of continued representation of a party by his counsel of choice. *In re Estate of Myers*, 130 P.3d 1023, 1025 (Colo.2006). Disqualification of a party's chosen attorney is an extreme remedy and is only appropriate where required to preserve the integrity and fairness of the judicial proceedings. *Id.* at 1025–26. A defendant's counsel of choice cannot be disqualified absent a showing that there is "a clear danger that prejudice to a client or adversary would result from continued representation." *Id.* at 1025 (citation omitted). The required showing of prejudice cannot be based on mere speculation or conjecture. *Id.* And the trial court must determine that "any remedy short of disqualification would be ineffective." *Id.* at 1027.

¶ 14 Here, the trial court disqualified Roy and Chalmers from representing Nozolino in the homicide case despite Nozolino's express preference to have these attorneys continue to represent him. The trial court based this holding on its determination that a conflict of interest exists between Thompson and Nozolino,[1] but did not find that any prejudice would result from Roy and Chalmers's continued representation of Nozolino. The trial court found that Thompson is Roy and Chalmers's supervisor. The record does not establish, however, that Roy or Chalmers's representation of Nozolino has been materially limited by their relationship with Thompson. Likewise, the record is devoid of evidence that disqualification is the only effective remedy.

¶ 15 Based on the record before us, we are not persuaded that a direct conflict exists

---

1. The trial court held that Thompson's conflict of interest arose by virtue of Thompson's designation as a necessary witness against Nozolino in the perjury case.

An attorney is prohibited from using "information relating to representation of a client to the disadvantage of the client unless the client gives informed consent[,]" or unless the use is otherwise permitted under the Colorado Rules of Professional Conduct. Colo. RPC 1.8(b); *see also* Colo. RPC 1.6(a). Here, Thompson withdrew from the homicide case once she was named as a witness against Nozolino in the perjury case. At the same time, the Public Defender's office enforced a wall between all aspects of the homicide case and Thompson.

Any conflict Thompson may have as a result of being a witness in the perjury case does not impugn Roy and Chalmers. This Court previously held in *Shari* that "a government attorney's individual conflicts are not imputed to the entire government agency for which he works." 204 P.3d at 459 (citing Colo. RPC 1.11, cmt. 2). Thus, any conflict Thompson might have is not imputed to Roy and Chalmers.

between Roy and Nozolino, or Chalmers and Nozolino. In any event, we determine that Nozolino should have the opportunity to waive conflict-free representation under these circumstances.

### B. Waiver of the Right to Conflict–Free Representation

¶ 16 The trial court found that a non-waivable conflict exits between Roy and Nozolino, and Chalmers and Nozolino. We disagree. A defendant may, in some circumstances, waive his right to conflict-free representation. Colo. RPC 1.7; *Harlan*, 54 P.3d at 879; *Castro*, 657 P.2d at 944. For a defendant to waive the right to conflict-free representation, the lawyer must reasonably believe that he will be able to provide competent and diligent representation, and the defendant must give informed consent. Colo. RPC 1.7. Also, the defendant must be fully advised of potential and existing conflicts of interest. *Martinez*, 869 P.2d at 524. Even then, a defendant's right to waive conflict-free representation is not without limits. *See Harlan*, 54 P.3d at 879; *Martinez*, 869 P.2d at 527. When determining whether a defendant may waive his right to conflict-free representation—and thereby whether disqualification of the attorney is necessary—the trial court must examine: (1) the defendant's preference for particular counsel; (2) the public's interest in maintaining the integrity of the judicial process; and (3) the nature of the particular conflict. *Harlan*, 54 P.3d at 877 (citing *Rodriguez*, 719 P.2d at 706–07); *Martinez*, 869 P.2d at 527. This balancing approach ensures careful scrutiny of the important competing interests present in the varied circumstances in which conflicts arise. *Rodriguez*, 719 P.2d at 706-07.

#### 1. The Right to Continued Representation by Counsel of Choice

¶ 17 This Court has previously recognized that an indigent defendant is "entitled to continued and effective representation by court appointed counsel in the absence of a demonstrable basis in fact and law to terminate that appointment." *Williams v. Dist. Court*, 700 P.2d 549, 555 (Colo.1985); *see also*

*Harlan*, 54 P.3d at 878. Thus, while no right exists for an indigent defendant to choose his counsel, once chosen, the indigent defendant's choice is afforded great weight. *Harlan*, 54 P.3d at 878; *Rodriguez*, 719 P.2d at 707. That is because respect and deference must be accorded to a defendant's intelligent and informed choice of counsel under our justice system. *See Martinez*, 869 P.2d at 528.

¶ 18 In *Rodriguez*, this Court determined that disqualification of the Public Defender's office was not required when one of the Public Defenders would likely be required to cross-examine, and possibly impeach the testimony and credibility of, a former client during trial. 719 P.2d at 703–04. Instead, the defendant could waive his right to conflict-free representation. *Id.* at 710. In so deciding, the Court determined that the defendant's desire for continued representation by the Public Defender was entitled to great weight because the defendant had been represented by his current counsel since the inception of the case and had not questioned the competence or fidelity of his assigned attorneys. *Id.* at 707.

¶ 19 Here, the trial court advised Nozolino that the trial court believed Roy and Chalmers had a conflict. After affirming that Nozolino understood the conflict, the trial court asked him whether he wanted the Public Defenders to continue to represent him. Nozolino responded that he was "very satisfied with the team as the current mix is. Absolutely." Like the defendant in *Rodriguez*, Nozolino has been represented by Roy since the inception of the case more than two years ago and by Chalmers for the majority of the case. *See id.* Likewise, Nozolino has not questioned the competence or fidelity of his assigned attorneys. *See id.*

¶ 20 Under these circumstances, Nozolino's preference for Roy and Chalmers as his attorneys carries great weight against their disqualification.

#### 2. The Public's Interest in Maintaining the Integrity of the Judicial Process

¶ 21 Next, we consider the public's interest in maintaining the integrity of

the judicial process. The public's interest in the fair and proper administration of justice requires "that trials be conducted in an even-handed manner; that the participants in the adversary process ... be protected from unfair tactics; and that the courts maintain the integrity of the judicial system and the highest ethical standards of the legal profession." *Id.* at 707–08. Disqualification should not be granted lightly, though it may be appropriate if a defendant's decision to retain his counsel of choice would significantly undermine the public confidence in the impartiality and fairness of the judicial process. *Id.* at 706.

¶ 22 In this case, the trial court relied heavily on this factor and determined that allowing the Public Defender's office to remain in the case would undermine public confidence in the judicial process. The trial court expressed concern that the public would view Roy and Chalmers's representation as lacking if their supervisor was a witness against their client. The trial court's concerns, though legitimate, are overstated because Thompson is screened from the homicide case and therefore is not supervising Roy and Chalmers's work on Nozolino's case. The fear that the public's confidence might be undermined is also significantly diminished by Nozolino's choice to retain Roy and Chalmers after being advised of the conflict on the record. Thus, any concerns regarding public perception are insignificant in light of the screen and Nozolino's waiver.

### 3. The Nature of the Particular Conflict

¶ 23 The final consideration in evaluating whether an attorney should be disqualified for a conflict of interest is the nature of the conflict itself. This Court distinguishes between actual conflicts, which require an express waiver from the defendant, and potential conflicts, which may or may not require an express waiver. *Shari*, 204 P.3d at 462.

¶ 24 Here, to the extent a conflict exists involving Roy or Chalmers, it is a potential conflict rather than an actual conflict. Additionally, Nozolino acknowledged and accepted the conflict on the record when he told the trial court that he understood the conflict and that he still wanted Roy and Chalmers as his attorneys. Because disqualification is an extreme remedy, we are loath to disqualify counsel for a potential conflict when the defendant wishes to execute an express waiver. Thus, this factor weighs against disqualification.

¶ 25 Our analysis of the factors critical to the determination of whether Nozolino must be allowed to waive conflict-free representation convinces us that the balance weighs in favor of Nozolino's preference for continued representation by Roy and Chalmers. Thus, we hold that the trial court abused its discretion when it disqualified Roy and Chalmers from representing Nozolino in the homicide case.

### V. Application

¶ 26 We make the rule absolute and remand this case to the trial court for an advisement on the record so that Nozolino may decide whether to waive conflict-free representation. The trial court is directed to appoint independent counsel to advise Nozolino on the conflict of interest issue. That advisement should include a discussion between Nozolino and his attorney informing Nozolino of the nature of any existing conflict and the specific ways in which the conflict may impact the attorneys' ability to effectively represent him at various stages of the pending litigation. *See Rodriguez*, 719 P.2d at 708. Further, the attorney advising Nozolino should place any potential conflict on the record and advise the trial court that as complete a disclosure as possible has been made to Nozolino. *See id.* Finally, the trial court must determine whether Nozolino has made the waiver of conflict-free representation voluntarily, knowingly, and intelligently. *See id.*