2014 CO 25

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Eric Lamont BROWN, Respondent.**

**Supreme Court Case No. 11SC441**

Supreme Court of Colorado.

April 7, 2014

Attorneys for Petitioner: Daniel H. May, District Attorney, Deborah F. Pearson, Senior Deputy District Attorney, Colorado Springs, Colorado

Attorney for Respondent: Jenifer Stinson, Stinson Law Office, Denver, Colorado

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this case, we consider the balance between a defendant's Sixth Amendment constitutional right to his or her counsel of choice and the public's interest in the fairness and efficiency of the judicial system. In *People v. Brown,* — P.3d —, No. 06CA1751, 2011 WL 1195778, *3–5 (Colo. App. Mar. 31, 2011), the court of appeals developed a balancing test for a trial court to use when deciding whether to grant or deny a defendant's request for a continuance so that the defendant may change counsel. The court of appeals applied its newly developed test to the facts in this case and concluded that the trial court abused its discretion and violated Brown's Sixth Amendment right to counsel of choice when it denied his request for a continuance. *Id.* at — — —, 2011 WL 1195778 at *3–6. As a result, the court of appeals reversed Brown's convictions and remanded the case for a new trial.

¶ 2 While we agree with the court of appeals that the decision whether to grant a continuance is a fact-based question best decided by the trial court, we decline to adopt the test that the court of appeals developed because it does not adequately reflect our precedent requiring the trial court to consider the totality of the circumstances when deciding whether to grant or deny a continuance. *See People v. Hampton,* 758 P.2d 1344, 1353–54 (Colo.1988) (holding that whether a court should grant a continuance depends on the facts and circumstances of the case). We hold that when deciding whether to grant a continuance to allow a defendant to change counsel, the trial court must conduct a multi-factor balancing test and determine whether the public's interest in the efficiency and integrity of the judicial system outweighs the defendant's Sixth Amendment right to counsel of choice. Applying the test to this case, we conclude that the record is inadequate to determine whether the trial court abused its discretion when it denied Brown's request for a continuance. Hence, we reverse the decision of the court of appeals and return the case to that court to remand the case to the trial court for additional findings and conclusions.

## I. Facts and Procedural History

¶ 3 Respondent Eric Lamont Brown was arrested and charged with kidnapping, sexual assault, attempted unlawful sexual contact, assault, and menacing in March 2005. The events giving rise to the charges occurred in March 2004.

¶ 4 The trial court appointed a public defender, Cynthia Jones, to represent Brown. The trial was initially scheduled to begin in mid-September 2005. In August 2005, Jones requested a continuance of the jury trial because the Colorado Bureau of Investigation had not completed its testing of the evidence; however, because Brown was not

in attendance, the trial court deferred its ruling until Brown was present. Brown appeared before the court on September 12, 2005, at which point Jones renewed her request for a continuance. The People did not object because they also needed more time to prepare. The court granted the continuance and rescheduled the trial for December 6, 2005.

¶ 5 On December 1, 2005, five days before the trial date, the People requested a continuance on the grounds that the victim could not testify because her newborn child was in the intensive care unit. Brown agreed to the continuance but refused to waive his speedy trial right. As a result, the court granted the continuance and rescheduled the trial for January 10, 2006, a date within the speedy trial deadline.

¶ 6 On January 10, 2006, the date scheduled for trial, the People asked the trial court to reconsider its denial of the People's motion to introduce prior acts evidence under CRE 404(b). The trial court reversed its previous ruling and granted the People's request to introduce prior acts evidence. In light of the trial court's ruling, Jones requested another continuance to prepare for the introduction of the prior acts evidence. The trial court reset the trial for February 14, 2006.

¶ 7 On February 2, 2006, David Foley, a private defense attorney, filed an entry of appearance on behalf of Brown. On February 6, 2006, Foley filed a written motion for a continuance on Brown's behalf stating that he had just been retained and wanted an opportunity to negotiate with the People. In connection with this motion, Brown, who was in custody at the time, offered to waive his right to a speedy trial. At a previously scheduled pretrial hearing on February 6, 2006, the trial court noted its receipt of Foley's entry of appearance; however, Foley was not present at the hearing. Jones, Brown's public defender, was present. Not only was Jones unaware that Brown had hired a new attorney, but she was not even aware that Brown was intending to hire a private attorney. Jones indicated that she had been preparing for months and was prepared for trial the following week. The trial court responded, "I'm expecting to go to trial next week, too. So if you hear anything from Mr. Foley, if you would like to pass on to him that trial date—you know, unless there is [sic] some exigent circumstances I'm not aware of, the trial will go next week."

¶ 8 On February 8, 2006, Foley appeared in court, along with Jones, and explained that he had started meeting with Brown's family over one month prior to the trial date but that he did not get involved in the case until the previous week because he was waiting to be officially retained. He explained to the trial court that he wanted to take the case but that he needed more time to prepare and could not possibly be ready to go to trial the following week because he was still waiting on discovery. He also noted that Brown remained in custody and opined that he did not believe Brown hired him for purposes of delay. The People "strongly" objected to any continuance. When asked by the court, Jones again reiterated that she would be prepared for trial the following week.

¶ 9 After listening to Foley, Jones, and the People, the trial court denied the motion to continue. The trial court gave several reasons for its decision:

> It's been continued several times; we've got a number of witnesses subpoenaed; Ms. Jones is ready to proceed; and, you know, I have no doubt that Ms. Jones will do a very competent job representing Mr. Brown. Mr. Foley, if you wanted to enter into negotiations some time the rest of this week with [the People] to see if this could be resolved, you are certainly welcome to do that. But absent some other reason that I have not been told, I am not going to continue the trial in this case.

In reaching this decision, the trial court neither asked Foley how long it would take him to prepare nor made any additional findings with respect to whether a continuance was warranted in this situation. The trial court also did not ask what the victim's position was regarding a potential continuance.

¶ 10 After the trial court denied the request for a continuance, Foley alerted the trial court of a possible conflict between Brown and Jones. The trial court set a conflict hearing with a different judge for

later that same day. At the conflict hearing, the judge ruled that it was not legally necessary to replace Jones. That court explained that there was no conflict requiring substitution of counsel because the only conflict that existed was that Brown wished to hire private counsel. Hence, the court concluded that Jones was in a position to provide Brown with adequate representation. In light of this ruling, the trial court did not change its decision to deny Foley's motion for a continuance. Foley subsequently withdrew his appearance.

¶ 11 The trial commenced as scheduled on February 14, 2006, with Jones representing Brown. A jury convicted Brown of kidnapping, sexual assault, attempted unlawful sexual contact, assault, and menacing. The trial court adjudicated Brown a habitual criminal and sentenced him to an indeterminate term of 36 years to life in the Department of Corrections.

¶ 12 Brown appealed his convictions and argued that the trial court committed reversible error by denying his motion to continue, which violated his Sixth Amendment right to counsel of his choice. The court of appeals, in a published opinion, agreed and reversed Brown's convictions. *Brown*, —— P.3d at ——, 2011 WL 1195778, at *1. In reaching its decision, the court of appeals developed a new test to assist trial courts in determining whether to grant a continuance. *Id.* at ——–——, 2011 WL 1195778 at *3–5. The court of appeals explained that the trial court should weigh the defendant's right to choose counsel against the following four considerations: (1) whether the defendant has an improper motive such as delaying trial; (2) whether the defendant's chosen counsel is available to take and try the case; (3) whether granting a continuance impacts the court's docket; and (4) whether granting the continuance prejudices the prosecution beyond sim-

ply causing an inconvenience. *Id.* Applying this test, the court of appeals concluded that the trial court abused its discretion because its "findings do not show that it adequately considered the right of [Brown] to counsel of his choosing when it refused to continue the trial to afford his newly-retained counsel time to prepare." *Id.* at ——, ——, 2011 WL 1195778 at *1, *6.

¶ 13 We granted certiorari and now reverse and remand.[1]

## II.  Analysis

¶ 14 Brown argues that the trial court reversibly erred by refusing to continue the proceedings when his newly hired private counsel needed additional time to prepare for trial. He argues that the court's insistence on expediency violated his Sixth Amendment right to hire counsel of his own choosing. He therefore concludes that his convictions must be overturned because deprivation of his right to counsel of his choice constitutes structural error.

¶ 15 We agree with Brown's assertion that a court abuses its discretion by basing its decision to deny a continuance on expediency alone; indeed, we conclude that a trial court must weigh a multitude of factors when making this decision. In this case, however, we cannot tell from the record to what extent the trial court weighed various factors in reaching its decision. As a result, we cannot determine whether the trial court properly exercised its discretion. To reach these conclusions, we first review a defendant's right to counsel of choice. Next we consider how a trial court should analyze a request for a continuance to substitute counsel. Finally, we apply our test to this case.

### A.  A Defendant's Right to Counsel of Choice

¶ 16 The Sixth Amendment to the United States Constitution has been inter-

---

1. Specifically, we granted certiorari on three issues:

    1. Whether the court of appeals erred in finding that the trial court abused its discretion by denying the defendant's motion to continue the jury trial.
    2. Whether the court of appeals erred in finding that the trial court violated the defendant's Sixth Amendment right to counsel by relying upon only one factor—the efficient administration of justice—for its ruling denying the defendant's motion to continue the jury trial.
    3. Whether the court of appeals erred by not remanding the case to the trial court to allow the prosecution the opportunity to establish facts relevant to the newly imposed requirements.

preted to afford a criminal defendant the right to be represented by counsel of his or her choice. *See* U.S. Const. amend. VI; *Rodriguez v. Dist. Court,* 719 P.2d 699, 705 (Colo.1986). This right is well established; the United States Supreme Court has recognized this right for decades. *See, e.g., Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). Beyond simply being longstanding, however, a defendant's right to select an attorney whom he or she trusts is considered to be central to the adversary system and "of substantial importance to the integrity of the judicial process." *Rodriguez,* 719 P.2d at 705–06. As such, we afford this right "great deference." *Id.* at 705.

¶ 17 The Sixth Amendment, however, "does not guarantee an absolute right to counsel of choice in all cases." *Id.* at 706. In some situations, considerations other than the defendant's interest in retaining a particular attorney, such as judicial efficiency or "the public's interest in maintaining the integrity of the judicial process," may be deemed more important than the defendant's interest in being represented by a particular attorney. *Id.*; *People v. Maestas,* 199 P.3d 713, 716–17 (Colo.2009). For example, a defendant may not use the right to counsel of choice to delay the trial or impede judicial efficiency. *Maestas,* 199 P.3d at 717. Similarly, a defendant may be precluded from using the chosen attorney if that attorney has a conflict of interest that would "significantly undermine public confidence in the impartiality and fairness of the judicial process." *Rodriguez,* 719 P.2d at 706.

¶ 18 Having briefly reviewed the contours of a defendant's Sixth Amendment right to counsel of choice, we turn to the issue presented by this case: when, if ever, a trial court errs by denying a defendant's motion for a continuance so that the defendant can use his or her chosen counsel.

### B. Denial of a Continuance Balancing Test

¶ 19 A motion for a continuance falls within "the sound discretion of the trial court." *People v. Hampton,* 758 P.2d 1344, 1353 (Colo.1988). On appeal, we do not disturb a trial court's denial or grant of a motion for a continuance in the absence of an abuse of discretion. *Id.* "We ... find error only if the [trial] court's decision was arbitrary or unreasonable and materially prejudiced the defendant." *United States v. Simpson,* 152 F.3d 1241, 1251 (10th Cir. 1998); *accord People v. Scales,* 763 P.2d 1045, 1048 (Colo.1988) ("Absent an abuse of discretion that results in injustice, the decision to grant a continuance is left to the sound discretion of the trial court.").

¶ 20 There are no "mechanical tests" for determining whether a trial court abuses its discretion by denying a continuance. *Hampton,* 758 P.2d at 1353. Rather, an appellate court must consider the totality of the circumstances of the case when determining whether a trial court has abused its discretion by denying a continuance. *Id.* at 1353–54. In cases like the one presently before us, the court must balance the defendant's Sixth Amendment right to counsel of choice against the demands of fairness and efficiency. *United States v. Gonzalez–Lopez,* 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (The trial court must balance "the right to counsel of choice against the needs of fairness and against the demands of its calendar." (internal citations omitted)). The trial court has "wide latitude" in determining how to strike this balance. *Id.* A trial court is only required to grant a continuance if there is a compelling reason to do so because "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

¶ 21 In conducting this balancing test, the trial court must consider the defendant's Sixth Amendment right to counsel of choice. Refusing to allow the defendant to use his or her chosen attorney is an "extreme remedy" that should not be used absent a

showing of prejudice. *See People v. Nozolino,* 2013 CO 19, ¶ 13, 298 P.3d 915 (discussing the Sixth Amendment and a defendant's right to waive counsel's conflict of interest). Therefore, when conducting the balancing test, the court must accord the defendant's right to counsel of choice significant weight.

¶ 22 While the defendant's right to counsel of choice is a crucially important consideration for the trial court, the right is not an unlimited one. *Maestas,* 199 P.3d at 716–17. The trial court must balance the defendant's right to counsel of choice against the public's interest in both the "efficient administration of justice" and maintaining the integrity of the judicial process. *People v. Harlan,* 54 P.3d 871, 877 (Colo.2002) (quoting *People v. Garcia,* 698 P.2d 801, 806 (Colo.1985) (explaining the balancing test for disqualifying counsel)); *Gandy v. Alabama,* 569 F.2d 1318, 1323 (5th Cir.1978) ("[T]he proper exercise of the trial court's discretion requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice.").

¶ 23 When weighing the public's interest in the efficiency and integrity of the judicial process, the trial court is not limited to only considering four factors (as the court of appeals suggested), but rather may consider any number of factors which it deems relevant. For instance, when the Tenth Circuit Court of Appeals addressed this issue, it used an eight-factor balancing test to weigh the public's interest in the efficiency and integrity of the judicial process against the defendant's Sixth Amendment right to counsel of choice. *United States v. Trestyn,* 646 F.3d 732, 739 (10th Cir.2011). Specifically, the Tenth Circuit considered whether:

1. the continuance would inconvenience witnesses, the court, counsel, or the parties;

2. other continuances have been granted;

3. legitimate reasons warrant a delay;

4. the defendant's actions contributed to the delay;

5. other competent counsel is prepared to try the case;

6. rejecting the request would materially prejudice or substantially harm the defendant's case;

7. the case is complex; and

8. any other case-specific factors necessitate or weigh against further delay.

*Id.* (formatting altered) (quoting *United States v. Flanders,* 491 F.3d 1197, 1216 (10th Cir.2007)). Similarly, the Fifth Circuit also used a multi-factor balancing test for weighing the public's interest. *Newton v. Dretke,* 371 F.3d 250, 255 (5th Cir.2004). The Fifth Circuit's test, while similar to the Tenth Circuit's test,[2] suggests that a court should also consider "the length of the requested delay" and the defendant's motives for changing counsel.[3] *Id.* (quoting *Gandy,* 569 F.2d at 1324).

¶ 24 We find the set of factors used by the Tenth Circuit and Fifth Circuit to provide a useful starting point for a court considering whether to grant a continuance so that a defendant may use his or her counsel of choice. *See People v. Sepeda,* 196 Colo. 13, 19, 581 P.2d 723, 727 (1978) (adopting a test from the Tenth Circuit to determine the constitutionality of a method for assembling the list of names in a jury pool); *see also M.S. v. People,* 2013 CO 35, ¶ 16 n. 9, 303 P.3d 102 ("The Colorado Supreme Court is bound only by decisions of the United States Supreme Court and is not bound by decisions of lower federal courts."). Howev-

**2.** Although each test words the factors differently, there is significant overlap between the test from the Tenth Circuit and the test from the Fifth Circuit. Specifically, both tests consider: whether other continuances have been granted; the inconvenience of a continuance to the parties, witnesses, and the court; and facts unique to the case. *Dretke,* 371 F.3d at 255 (quoting *Gandy,* 569 F.2d at 1324); *Trestyn,* 646 F.3d at 739 (quoting *Flanders,* 491 F.3d at 1216).

**3.** The other four factors that the Fifth Circuit discussed are: "(2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; ... [and] (6) whether there are other unique factors present." *Newton,* 371 F.3d at 255 (quoting *Gandy,* 569 F.2d at 1324).

er, in reviewing these tests, we note that neither list is exhaustive. For example, not incorporated into either of the other tests is a consideration of the victim's position regarding the continuance. This is a required factor in Colorado if the victims' rights act[4] applies. § 24–4.1–303(3), C.R.S. (2013).[5] The age of the case may also be a relevant factor for the court to consider. Therefore, we direct the trial court to consider and make a record of the impact of the following factors so that reviewing courts can determine if the trial court properly exercised its discretion in determining whether to grant a continuance:

1. the defendant's actions surrounding the request and apparent motive for making the request;

2. the availability of chosen counsel;

3. the length of continuance necessary to accommodate chosen counsel;

4. the potential prejudice of a delay to the prosecution beyond mere inconvenience;

5. the inconvenience to witnesses;

6. the age of the case, both in the judicial system and from the date of the offense;

7. the number of continuances already granted in the case;

8. the timing of the request to continue;

9. the impact of the continuance on the court's docket;

10. the victim's position, if the victims' rights act applies; and

11. any other case-specific factors necessitating or weighing against further delay.

In adopting this multi-factor test, we reiterate that no single factor is dispositive and the weight accorded to each factor will vary depending on the specific facts at issue in the case.

¶ 25 The test that we announce today is different from the test developed by the court of appeals because the court of appeals'

test limited the trial court to weighing the defendant's interest in obtaining counsel of his or her choosing against four competing considerations. *See Brown*, —— P.3d at ——– ——, 2011 WL 1195778, at *3–5 (holding that a trial court should balance the defendant's Sixth Amendment right against the following four factors: (1) whether the defendant has an improper motive such as delaying trial; (2) whether the defendant's chosen counsel is available to take and try the case; (3) whether granting a continuance impacts the court's docket; and (4) whether granting the continuance prejudices the prosecution beyond simply causing an inconvenience). While we agree that the trial court should include the considerations that the court of appeals identified in its analysis, because we believe that there are other factors that also must be included in the analysis, we decline to adopt the court of appeals' test and instead adopt a test that requires that the trial court consider additional factors and make a sufficient record that it conducted the appropriate balancing test.

## C. Application and Remand

¶ 26 Having explained the balancing test, we now examine how the test works in practice. Given the highly factual nature of the balancing test, the trial court is undeniably in the best position to determine whether a continuance is appropriate. *See People v. Rodriguez*, 786 P.2d 1079, 1082 (Colo.1989) (Appellate courts "are not in the best position for original fact-finding."). The trial court should place its findings on the record; otherwise, appellate review may be impossible and remand for development of the record may be necessary. *See People v. McIntyre*, 789 P.2d 1108, 1110 (Colo.1990) (discussing the need for a complete record when reviewing a trial court's decision regarding the voluntariness of a confession). Assuming the court's findings are on the record, we will respect the court's findings of

---

4. Section 24–4.1–302.5, C.R.S. (2013), lists the rights afforded to victims.

5. Section 24–4.1–303(3) states:
   The district attorney's office, if practicable, shall inform the victim of any pending motion

that may substantially delay the prosecution. The district attorney shall inform the court of the victim's position on the motion, if any. If the victim has objected, the court shall state in writing or on the record prior to granting any delay that the objection was considered.

fact so long as the findings are supported by evidence in the record. *People v. Thomas*, 853 P.2d 1147, 1149 (Colo.1993).

¶ 27 In this case, the record includes limited information relevant to evaluating whether the trial court abused its discretion by denying the continuance. First, the record includes information about Brown's desire to hire alternative counsel. Specifically, the record reflects that although there was no conflict with his public defender, Jones, requiring substitution, Brown nevertheless wanted to hire a new attorney, Foley. Foley was willing to take the case but needed additional time to prepare. Second, the record contains information about the timing of the motion for a continuance and substitution of counsel. Brown hired Foley right before the start of the trial. Foley entered his appearance 12 days prior to trial. Foley requested a continuance four days later, eight days before trial, to prepare. Third, the record reflects several continuances for various reasons. This would have been the fourth continuance in a case that had been pending in the judicial system for 10 months. Further, the events giving rise to the case occurred nearly two years before the scheduled trial. Foley opined that he did not believe that Brown was attempting to change counsel at the last minute for dilatory or other illegitimate reasons. The trial court, however, did not make any findings on Brown's motives when it rejected the continuance.

¶ 28 Although the record contains some of the information for evaluating whether the trial court abused its discretion in denying the continuance, the record lacks information about other factors that the court should have considered when making its decision. Importantly, lacking from the record is any information about how long it would take Foley to prepare for trial. The trial court did not inquire into how long of a continuance was needed. The record also lacks information about the court's docket and whether the continuance would cause significant inconvenience for the witnesses who had already been subpoenaed several times. The record also does not contain information regarding whether the trial court considered the age of the case when deciding to deny the continuance. Finally, the victim's position regarding a potential continuance is relevant and must be considered. The victim's position regarding this motion to continue is not in the record in this case.

¶ 29 Given the lack of information about these other factors, it is necessary for us to remand the matter so that the trial court may make sufficient factual findings.[6] *See People v. Cervantes–Arredondo*, 17 P.3d 141, 148 (Colo.2001) (remanding the case to the trial court so that the trial court can apply the proper legal test).

### III. Conclusion

¶ 30 We hold that when deciding whether to grant a continuance to allow a defendant to change counsel, the trial court must conduct a multi-factor balancing test and determine whether the public's interest in the efficiency and integrity of the judicial system outweighs the defendant's Sixth Amendment right to counsel of choice. In this case, we conclude that there is insufficient information in the record to determine if the trial court abused its discretion and violated Brown's Sixth Amendment right to counsel of his choice by denying the continuance. Therefore, we reverse the decision of the court of appeals and return the case to that court to remand the case to the trial court for additional findings and conclusions. On remand, the trial court should consider the factors that we have set forth in this opinion as well as any other factors it deems relevant.

JUSTICE MÁRQUEZ dissents, and JUSTICE COATS and JUSTICE EID join in the dissent.

JUSTICE MÁRQUEZ, dissenting.

¶ 31 At issue here is a trial court's discretionary decision to deny a defendant's request to postpone a trial. Underlying this defendant's particular request, however, is the tension between the public's interest in

---

**6.** Because we do not decide whether there was an impermissible violation of Brown's Sixth Amendment right to counsel, we do not address whether such a denial constitutes a structural error, thus requiring reversal of the convictions.

the orderly administration of justice, on the one hand, and a defendant's Sixth Amendment constitutional right to counsel of choice, on the other. We have stated that a defendant's Sixth Amendment right to be represented by counsel of choice is "entitled to great deference." *Rodriguez v. Dist.* Court, 719 P.2d 699, 705 (Colo.1986). We have also made clear that "[t]here are no mechanical tests for determining whether the denial of a continuance constitutes an abuse of discretion." *People v. Hampton,* 758 P.2d 1344, 1353 (Colo.1988). Rather, " '[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *Id.* at 1353–54 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

¶ 32 In my view, whether a trial court abuses its discretion in denying a continuance to permit a defendant to be represented by his retained counsel of choice depends on the totality of the circumstances, which necessarily will vary in any given case. I disagree with the majority's new test, which requires trial courts not only to consider a list of at least ten specific factors, but also requires trial courts to "make a sufficient record" of such factors or risk remand years after the fact to make additional findings about the circumstances that existed at the time the continuance was denied. The majority's test is not only rigid, but it gives trial courts virtually no guidance on how to weigh the various factors. In short, it is the very type of "mechanical" test that we—following the United States Supreme Court—have eschewed. For these reasons, and because in my view the circumstances in the record before us do not reflect that the orderly administration of justice outweighed Brown's Sixth Amendment right to retained counsel of choice, I respectfully dissent.

## I.

¶ 33 The trial court appointed a public defender to represent Brown, who was indigent. A month and a half before trial, Brown's family met with a private defense attorney to retain him to represent Brown. Shortly before trial, Brown's family secured the necessary funds for the retainer. Brown's newly retained counsel filed an entry of appearance twelve days before trial, and requested a continuance eight days before trial. At that time, the case had been pending for ten months, and the court had granted three prior continuances. Two of the continuances were not directly attributable to Brown; none of the previous continuances involved a request to delay trial to obtain different counsel.[1]

¶ 34 Brown's motion for a continuance indicated that Brown was willing to waive his speedy trial rights. At the hearing on the motion, Brown's newly retained counsel explained that he had met with Brown's family more than one month before the trial date, but he did not enter an appearance until Brown's family was able to retain him. He informed the court that he already had an investigator and was "prepared to jump into this case." However, he explained that because he had just received discovery, he needed additional time to prepare for trial. Brown's retained counsel also stated that he did not think that Brown was "doing this for any purpose of delay, or anything like that . . . it's just been a matter of getting the retainer put together." He noted that Brown remained in custody.

¶ 35 The trial court asked the public defender whether she was prepared for trial and she responded in the affirmative. The People then objected to any continuance, stating that the victim and the CRE 404(b) witness had been subpoenaed. The trial court denied Brown's motion for a continuance, reasoning:

---

1. The first continuance, although requested by Brown, was caused by a circumstance beyond his control; namely, tests from the Colorado Bureau of Investigation had not been completed. The prosecutor supported Brown's request because she also "need[ed] additional time before [the] case goes to trial." The prosecutor requested the second continuance because the victim was unavailable. Brown requested the third continuance when the trial court reconsidered an earlier ruling and permitted the prosecution to introduce significant new CRE 404(b) evidence. The trial court acknowledged that this request could not necessarily be attributed to Brown because it was based on the court's new ruling on a motion filed by the prosecution.

It's been continued several times; we've got a number of witnesses subpoenaed; [the public defender] is ready to proceed; and, you know, I have no doubt that [the public defender] will do a very competent job representing Mr. Brown.

¶ 36 By denying Brown's request for a continuance, the trial court effectively forced Brown to proceed to trial without his retained counsel of choice. Brown was convicted of kidnapping, assault, sexual assault, attempted unlawful sexual contact, and menacing. He was sentenced to an indeterminate term of thirty-six-years-to-life in the Department of Corrections.

## II.

¶ 37 "The freedom of a defendant to choose his own counsel is central to our adversarial judicial system." *People v. Maestas,* 199 P.3d 713, 716 (Colo.2009). A criminal defendant's right to retained counsel of choice is protected by the Sixth Amendment. *Id.*; *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).[2] The United States Supreme Court has explained, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624– 625, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

¶ 38 A defendant's Sixth Amendment right to be represented by his counsel of choice is "entitled to great deference." *Rodriguez v. Dist. Court,* 719 P.2d 699, 705 (Colo.1986). This constitutional guarantee " 'reflects the substantial interest of a defendant in retaining the freedom to select an attorney the defendant trusts and in whom the defendant has confidence.' " *Anaya v. People,* 764 P.2d 779, 781 (Colo.1988) (quoting *Rodriguez,* 719 P.2d at 705). Although the right to counsel

of choice is not absolute, a trial court must recognize a presumption in favor of a defendant's choice of retained counsel. *Tyson v. Dist. Court,* 891 P.2d 984, 990 (Colo.1995) (citing *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). A court's wrongful denial of the right to counsel of choice is not subject to harmless error analysis, and a defendant need not show prejudice. *Gonzalez–Lopez,* 548 U.S. at 152, 126 S.Ct. 2557; *Anaya,* 764 P.2d at 783.

¶ 39 The presumption in favor of a defendant's right to his retained counsel of choice may be overcome by considerations that "relate to the paramount necessity of preserving confidence in the integrity of the administration of justice." *Rodriguez,* 719 P.2d at 706. For instance, a defendant cannot insist on representation by an advocate who is not a member of the bar, by an attorney he cannot afford or who declines to represent the client, or by an attorney who has a conflict of interest that would undermine public confidence in the impartiality and fairness of the judicial process. *Gonzalez–Lopez,* 548 U.S. at 152, 126 S.Ct. 2557; *Wheat,* 486 U.S. at 159, 108 S.Ct. 1692; *Rodriguez,* 719 P.2d at 706. Similarly, a defendant cannot use his counsel of choice for an improper purpose, such as to delay proceedings or to impede the efficient administration of justice. *Maestas,* 199 P.3d at 717.

¶ 40 This court has not reviewed a trial court's discretionary decision to deny a continuance where such a denial implicates the defendant's Sixth Amendment right to retained counsel of choice. However, the tension that arises here between the public's interest in the orderly administration of justice and a defendant's Sixth Amendment constitutional right to counsel of choice is similar to the tension that arises where a defendant's choice of counsel potentially results in a conflict of interest. We have stated that where a conflict or potential for a conflict exists, the trial court must weigh the "public's confi-

2. Though no right exists for an indigent defendant to choose his court appointed counsel, *see Gonzalez–Lopez,* 548 U.S. at 151, 126 S.Ct. 2557, once appointed, the defendant is " 'entitled to continued and effective representation by court appointed counsel.' " *People v. Nozolino,* 2013

CO 19, ¶ 17, 298 P.3d 915 (quoting *Williams v. Dist. Court,* 700 P.2d 549, 555 (Colo.1985)). Thus, an indigent defendant's choice of continued representation by appointed counsel is "afforded great weight." *Id.* (citing *Rodriguez v. Dist. Court,* 719 P.2d 699, 707 (Colo.1986)).

dence in the integrity of the judicial process against the defendant's interest in being represented at trial by counsel of choice, even though the attorney may have a conflict of interest." *Tyson*, 891 P.2d at 990. Importantly, we have not required trial courts to consider a list of particular factors when balancing those important competing interests, but instead we have looked generally to the circumstances of the case to determine if the conflict undermines the fair and proper administration of justice. *Rodriguez*, 719 P.2d at 706–08.

¶ 41 We have held that because a defendant's counsel of choice is entitled to great deference, "disqualification should not be imposed unless the conflict of interest somehow taints the judicial system." *Maestas*, 199 P.3d at 717. Moreover, "such disqualification must be based on the evidence in the record and cannot be based on conjecture or speculation." *Id.* Thus, where the record does not show that a defendant's right to counsel of choice is outweighed by evidence of circumstances relating to the fair and efficient administration of justice, a trial court abuses its discretion by disqualifying counsel. *Id.* at 718.

## III.

¶ 42 Like a decision to disqualify counsel, a trial court's discretionary decision to deny a continuance may implicate a defendant's Sixth Amendment right to counsel of choice. The majority instructs trial courts to "balance the defendant's right to counsel of choice against the public's interest in both the efficient administration of justice and maintaining the integrity of the judicial system." Maj. op. ¶ 22. The majority also purports to give trial courts "wide latitude" in determining how to strike this balance. Maj. op. ¶ 20. Importantly, the majority acknowledges that there are no "mechanical tests" for determining whether a trial court abuses its discretion by denying a continuance. Maj. op. ¶ 20 (citing *People v. Hampton*, 758 P.2d 1344, 1353 (Colo.1988)). I agree. In *Hampton*, we made clear that " '[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the

request is denied.' " *Id.* at 1353–54 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

¶ 43 Nevertheless, the majority ultimately adopts a mechanical test that requires trial courts to consider and "make a sufficient record" with respect to a list of ten or more factors, regardless of whether the factors are even relevant in a particular case. Maj. op. ¶ 25. The majority derives these factors from tests articulated by the Fifth and Tenth Circuits. Unlike these circuits, however, the majority *requires* trial courts to consider each factor. *Cf. United States v. Hughey*, 147 F.3d 423, 432 (5th Cir.1998) ("There are no mechanical tests for making this determination, which is uniquely dependent upon the circumstances presented in every case."); *United States v. Mendoza–Salgado*, 964 F.2d 993, 1015 (10th Cir.1992) ("In weighing this balance, courts *may* consider [listed factors]") (emphasis added).

¶ 44 The majority further requires trial courts to discover and consider the victim's position on the continuance. Maj. op. ¶ 24. Although the majority relies on the victims' rights act for this requirement, *see* § 24–4.1–303(3), C.R.S. (2013), this provision requires the court to consider the victim's position only if: (1) the requested continuance would "substantially delay" the prosecution; (2) the district attorney informs the court of the victim's position; and (3) the victim actually objects to the delay. *Id.* In any event, this court has never suggested that the victim's position on a continuance should outweigh the defendant's constitutional right to counsel of choice.

¶ 45 The majority's mechanical test requires trial courts to consider a litany of factors, but it offers no guidance to trial courts on how to use those factors in striking a balance between a defendant's right to retained counsel of choice and the public's interest in the orderly administration of justice. Is the presence of a single factor in favor of the efficient administration of justice sufficient to outweigh the defendant's counsel of choice, or must all of the factors be present? Are all factors weighted equally, or should some factors carry greater weight than others? Most importantly, the majority

fails to indicate whether the defendant's right to retained counsel of choice is entitled to any presumption, or whether concerns about expediency or inconvenience should be presumed to overcome the defendant's choice.

¶ 46 The problems with the majority's test become even more apparent in its application to this case. The majority does not examine whether the record before us establishes that the orderly administration of justice outweighed Brown's Sixth Amendment right to counsel of choice. Instead, after announcing its new mechanical test—requiring trial courts to make a sufficient record showing its consideration of at least ten factors—the majority concludes that here "the record lacks information about other relevant factors the court should have considered when making its decision." Maj. op. ¶ 28. Thus, the majority remands the case to the trial court "to make sufficient factual findings." Maj. op. ¶ 29.

¶ 47 Our role on appellate review is to consider whether the record before us supports the trial court's ruling to deny the continuance in spite of the defendant's assertion of his right to retained counsel of choice. *See People v. Maestas*, 199 P.3d 713, 718 (Colo.2009) (reviewing record to determine whether concerns for the administration of justice and integrity of the judicial system outweighed defendant's right to retained counsel of choice). In my view, unless the public's interest in the orderly administration of justice outweighs the defendant's counsel of choice, as reflected by the totality of the circumstances in the record on appeal, the trial court abuses its discretion by denying a continuance.

¶ 48 A trial court's decision on a motion for continuance necessarily will be based on circumstances that exist at a particular snapshot in time. Where the record on appeal does not support the trial court's denial of a continuance, I believe that remand is both inappropriate and futile. If certain factors identified by the majority are neither mentioned by the trial court nor otherwise reflected in the record, we can logically conclude that the trial court did not rely on such factors when it made its decision to deny the continuance. It makes little sense to remand for the trial court to revisit such factors post-

hoc and "add" findings on factors it did not consider in the first place. Remanding the case for consideration of these additional factors puts the trial court in the awkward position of either reversing itself and granting a new trial, or affirming itself by bootstrapping additional reasons—long after the fact—for its previous denial of a continuance.

¶ 49 This case is particularly ill-suited for remand. According to the majority, the case must be returned to the trial court to make additional factual findings regarding a decision that was made based on circumstances that existed more than eight years ago, on February 8, 2006. Specifically, the trial court must now make findings regarding: (1) how long the continuance would have been; (2) how inconvenient the continuance would have been to the court's docket and the witnesses; and (3) what the victim's position regarding a potential continuance would have been. Even assuming that a trial court and other necessary witnesses can readily recall facts as they existed on a particular date in a particular case several years ago, this case is further complicated by the fact that the judge who made the decision to deny the continuance has since retired.

¶ 50 In my view, whether a trial court abuses its discretion in denying a continuance to permit a defendant to be represented by his retained counsel of choice depends on the totality of the circumstances, which necessarily will vary in any given case. Although the majority's list of factors include legitimate considerations, its test is too mechanical, and I would not *require* courts to consider or make a record regarding each factor, nor require remand where a court fails to do so.

### IV.

¶ 51 Given the futility of remand, I would turn to the presumption in favor of a defendant's Sixth Amendment right to retained counsel of choice to resolve this case. Consistent with our jurisprudence in the context of a motion to disqualify, I would hold that a trial court abuses its discretion in denying a continuance to permit a defendant to be represented by his retained counsel of choice,

unless the record reflects that the defendant's choice is outweighed by considerations relating to the orderly administration of justice.

¶ 52 In this case, the trial court denied Brown's motion to continue on grounds that the case had been continued three times, the witnesses were already subpoenaed, the public defender was ready to proceed, and the court believed that the public defender would "do a very competent job representing Mr. Brown." In so reasoning, the court ignored the presumption in favor of Brown's right to retained counsel of choice and instead focused improperly on the perceived effectiveness of appointed counsel.

¶ 53 The record before us does not reflect that Brown's choice of retained counsel was outweighed by considerations relating to the fair and efficient administration of justice. It is uncontested that Brown's motive in retaining counsel was not dilatory: Brown was in custody at the time of the request, and his retained counsel stated that Brown's family had been only recently able to pool sufficient resources for the retainer. The record establishes that Brown's retained counsel was available to work on the case, had ordered discovery, and had hired an investigator. Though the case had been pending in the judicial system for ten months, Brown offered to waive his right to a speedy trial. Moreover, only one of the previous continuances was attributable to Brown, and even that request was triggered by circumstances beyond his control. The record does not reflect that the continuance would have prejudiced the prosecution or inconvenienced the witnesses, that the continuance would have significantly inconvenienced the court's docket, or that the victim was opposed to the continuance. Accordingly, I would affirm the judgment of the court of appeals to reverse the trial court and return the case for a new trial.

I am authorized to state that JUSTICE COATS and JUSTICE EID join in the dissent.