23CA0981 Peo v Webster 05-21-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0981
Adams County District Court No. 18CR2394
Honorable Priscilla J. Loew, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeremy Webster,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Yun and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Esteban A. Martinez, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

¶ 1     Jeremy Webster appeals his convictions for one count of first degree murder, six counts of attempted first degree murder, four counts of first degree assault, one count of attempted first degree assault, and ten crime of violence sentence enhancers.  We affirm.

I.     Background

¶ 2     A jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 3     On June 18, 2018, following a road rage incident, Webster shot a mother, two of her children, and a bystander in a dental office parking lot.  One of the children died from the gunshot wound, while the other victims survived.  Webster was charged with the counts noted above.

¶ 4     At trial, defense counsel argued that Webster was not guilty by reason of insanity (NGRI).  The jury found Webster guilty as charged, however.  The trial court sentenced him to a mandatory controlling sentence of life without the possibility of parole in the custody of the Department of Corrections.

¶ 5     Webster rests his appeal on three Sixth Amendment arguments, asserting that the trial court (1) denied his right to counsel at a critical stage; (2) violated his right to counsel of choice

1

by removing his original public defenders; and (3) infringed his right to conflict-free counsel by creating a conflict between him and the public defenders. We disagree.

## II. Analysis

### A. Additional Facts

¶ 6 Webster's initial advisement took place three days after the shootings. But the case did not go to trial for another five years.

¶ 7 The initial wave of the COVID-19 pandemic struck during the pretrial proceedings and delayed the completion of Webster's NGRI evaluation. As a result, Webster did not enter his NGRI plea until April 6, 2020.

¶ 8 The COVID-19 pandemic also caused problems for Webster's lawyers. In January 2021, during a virtual hearing at which the trial court said it was prepared to set the case for trial, Webster's two public defenders, Kimberly A. Gonzalez and Stuart I. Rubinstein (jointly, initial defense counsel), informed the court that they did not intend to appear at trial due to their high risk for COVID-19 infections. Gonzalez said that health issues placed her at high risk and that Rubinstein was at high risk because he had a

2

young child and his wife was pregnant. Nonetheless, the court set Webster's trial for July 7, 2021.

¶ 9    Although that trial began as scheduled, it ended in a mistrial due to the unavailability of a critical prosecution witness. At a July 9 hearing to reset the trial, Rubinstein informed the trial court that he would not appear on a new trial date that coincided with his pregnant wife's due date — September 25, 2021. He said he would withdraw as Webster's counsel if the court scheduled the trial on that date. The parties and the court agreed to schedule the new trial for October 25, 2021, with a pretrial conference set for October 12.

¶ 10    On September 23, 2021, during a hearing at which Gonzalez appeared in person and Rubinstein appeared remotely, initial defense counsel requested a continuance due to the risks posed by COVID-19 to Rubinstein's family if he became infected while participating in the October 25 trial. The court did not address the requested continuance because the prosecution had not yet spoken with the victims about the possibility of another continuance.

¶ 11    At the next hearing in the case, conducted on September 29, the trial court said that, although it appreciated Rubinstein's

3

concerns regarding his family's health, it was denying the continuance request because, among other considerations, the victims objected to a continuance, the case had been pending for an "extremely lengthy" time, and all parties had previously agreed to the October 25 trial date.

¶ 12    Rubinstein did not appear at the October 12 pretrial conference. At that conference, Gonzalez appeared in person and again asked the trial court to continue the October 25 trial date because Rubinstein "made the choice to remain on [family and medical leave] for the protection of his family" and would not appear at the October 25 trial, and she could not "effectively represent [Webster]" alone. The court granted the continuance but postponed setting a new trial date to allow the parties time to discuss possible trial dates with their witnesses.

¶ 13    At an in-person hearing on October 28, which Gonzalez attended but Rubinstein did not attend, the court reset the trial for January 19, 2022.

¶ 14    On January 3, 2022, the chief judge of the judicial district in which the case was pending suspended all jury trials set in the district from January 3 through January 28, 2022, citing the

"alarming and continuing rise over the last week in COVID[-19] positivity rates due to outbreak of the Omicron variant." Seventeenth Jud. Dist., Addendum to Ninth Amended Administrative Order Regarding Court Operations Under COVID-19 Effective November 23, 2020 Until Further Notice and Order (Jan. 3, 2022). The chief judge said that the court would consider exceptions to the moratorium if, "due to unique and compelling circumstances, . . . cases . . . need to be tried within the next [thirty] days." *Id.* The prosecution asked the trial court to allow the trial in Webster's case to proceed as scheduled on January 19 under the exception.

¶ 15 At a pretrial conference on January 7, Gonzalez, who appeared in person, and Rubinstein, who appeared remotely, objected to the January 19 trial date due to COVID-19 health concerns. They stated that they did not intend to appear for trial even if ordered by the court. Nonetheless, the trial court found that the trial could proceed safely on the scheduled date and granted the prosecution's request for an exception to the chief judge's moratorium on jury trials.

¶ 16    On January 13, the court ordered the parties to disclose how many individuals planned to be physically present in the courtroom during trial.  The next day, initial defense counsel informed the trial court that Rubinstein had tested positive for COVID-19 and was "actively symptomatic," and that the defense would have "[zero] individuals present to proceed to trial on January 19, 2022."

¶ 17    On January 16, initial defense counsel filed a motion seeking a mistrial and continuance or, alternatively, leave to withdraw as Webster's counsel of record "due to a conflict of interest" (the conflict motion).  Initial defense counsel said that the choices Gonzalez would "have to make during trial to protect herself, her family, [Webster,] and her community [were] in direct conflict with her ethical obligations to [Webster] and create[d] a conflict of interest pursuant to [Colo. RPC] 1.7."  In addition, initial defense counsel said that Rubinstein's positive COVID-19 test result and his family situation created a similar conflict.

¶ 18    Initial defense counsel also said in the conflict motion that, "[s]hould the court decline to declare a mistrial," they "hereby move[d] to withdraw pursuant to [Colo. RPC] 1.7 based on personal conflicts of interest," and they requested that the court "appoint

conflict-free counsel to advise [Webster] regarding his rights and choices with respect to counsel's request to withdraw." Initial defense counsel based their requests on Webster's "right to counsel, due process, right to trial, equal protection, compulsory process, confrontation, right to silence, and right to appeal clauses of the United States and Colorado Constitutions and pursuant to the Colorado Rules of Professional Conduct."

¶ 19    The court held a hearing on the conflict motion on January 18, with Gonzalez present in person and Rubinstein appearing remotely. At the hearing, initial defense counsel reiterated their request for a mistrial or continuance due to Rubinstein's COVID-19 infection. The trial court denied the mistrial but said its "posture analysis" was "different on a motion to continue." Accordingly, in recognition of Rubinstein's "health circumstances," the trial court granted a continuance. It did not reset the trial at that time.

¶ 20    In addition, at the same hearing, the court acknowledged initial defense counsel's potential conflict of interest with Webster, "especially if the case [could not] be tried." The trial court noted that its role in presiding over Webster's trial included "effectively and safely running its courtroom," while "tak[ing] into account the

[victims'] position, the efficiency of the proceedings, the length of proceedings, [and] the pendency of the case." At the conclusion of the hearing, the court set a status conference "to address what [it saw] as the three pending issues[:] [c]hoice of counsel, conflict of counsel, and resetting the jury trial."

¶ 21    On January 26, the trial court held a virtual status conference to address those issues. As relevant to this appeal, to determine whether the trial could be reset for a date when initial defense counsel could appear in court, the court asked initial defense counsel whether the conflict described in the conflict motion was "permanent or ha[d] been remedied." Gonzalez responded that, because of her health situation, she could not guarantee that she could appear at a new trial setting: "If COVID[-19] is not better by the time this case is slated to start trial, I can't represent to the [c]ourt that I won't have a big concern or that I won't think that same [conflict] motion [would be] necessary."

¶ 22    The trial court then reviewed the factors set forth in *People v. Brown*, 2014 CO 25, ¶ 24, 322 P.3d 214, 220-21, for determining whether to grant a continuance. Applying the *Brown* factors, the

court found that initial defense counsel had a conflict in representing Webster. It said,

> Given the length of the case and the impact on the prosecution and potential prejudice, given the position that the victims have objected and this does have an impact and the age of the case — I recognize that this will delay a trial setting into a few months away but the permanent nature of COVID[-19] from this [c]ourt's perspective, this is the most appropriate decision because the permanency of COVID[-19] and the permanency of the circumstances of counsel and the [c]ourt cannot continue to risk what the status is with the pandemic in order to get this case tried.

¶ 23 The court specifically found that:

- Webster understood the "nature of the conflict," that "it affect[ed] [initial defense counsel's] ability to effectively represent him at a trial moving forward," and that Webster "would choose to have [initial defense counsel] as counsel."

- The COVID-19 pandemic was ongoing with "no end in sight," and Gonzalez's health situation and Rubinstein's family concerns were also "not going away," as initial defense counsel "conce[ded] in [the conflict] motion and the record in court."

9

- Therefore, the record did not allow the court to "make a specific finding" as to whether initial defense counsel would be available for trial "at any date in the future based on [their] circumstances."

- "[T]he length of the continuance necessary to accommodate" initial defense counsel was "completely unknown and speculative."

- Further delay of the trial "potential[ly] prejudice[d] . . . the prosecution," given the "number of witnesses in the case" and because "multiple witnesses ha[d] moved out of state."

- There had been multiple previous trial settings, and the continuances had inconvenienced the witnesses "both professionally and personally."

- The case was 1,318 days old.

- Initial defense counsel had already requested four continuances.

- Initial defense counsel made their most recent request for a continuance on "the eve of trial."

- Another continuance would impact the court's docket because Webster's case would require "a two and a half to three week trial depending on jury selection" and would require the court to "request senior judge coverage, request coverage from other judges, . . . move dockets, and delay other trials." The court noted that, not only was it "digging out of the pandemic with multiple jury trials," but that "set[ting] aside time for this trial continually [had] an impact on the [c]ourt's functioning[,] . . . the [c]ourt's availability[,] . . . [and] . . . the court system."

- The victims and their families had objected to each continuance.

- Other cases were proceeding to trial. The court explained that, in October 2021, when Webster's case was previously set for trial, the district had conducted ten felony trials. In addition, at the time of the status conference, other trials, including criminal felony jury trials with large jury panels, were proceeding to trial.

11

¶ 24    After finding that initial defense counsel had a conflict with Webster, the court permitted initial defense counsel to withdraw and appointed alternate defense counsel (ADC) to represent Webster. The court then scheduled a status conference.

¶ 25    But ADC did not appear at the February 1 status conference. Gonzalez attended with Sarah Quinn, the head of the public defender's office handling the case. Rubinstein was absent. The court noted that initial defense counsel had not yet filed a notice of withdrawal.

¶ 26    Quinn said that the public defender's office did not see a conflict between initial defense counsel and Webster, and that initial defense counsel would not be filing a motion to withdraw. The trial court pointed out that it had already found a conflict "pursuant to the rule and pursuant to case law," and it reiterated that initial defense counsel's request in the alternative to withdraw based on a conflict "didn't change facts before the [c]ourt as to the basis for the conflict." Moreover, the court observed that "the fact[s] before the [c]ourt in [the] last trial setting may very well be the same facts moving forward with the COVID[-19] pandemic and the health conditions of the counsel on the record from [Quinn's] office."

12

¶ 27    The court asked Quinn whether she wanted the case to proceed under such circumstances. Quinn asked the court to "set it over" for initial defense counsel, who were "still the attorneys [whom she] would assign to the case." She underscored that she would "not chang[e] counsel" in Webster's case. Quinn further expressed concern that Webster "ha[d] no attorney" present at the hearing.

¶ 28    The trial court responded that, "on paper, ADC [was] on the case," although it agreed to allow the public defender's office to file a motion to reconsider its ruling that initial defense counsel was conflicted from further representation of Webster. The court added that it was "completely inappropriate that [Webster was] not represented" at the time and set a further status conference.

¶ 29    On February 2, the court ordered initial defense counsel, Quinn, and ADC to appear at a status conference the next day. Also on February 2, Gonzalez filed a motion to reconsider the appointment of ADC (the motion to reconsider), asserting that the granted continuance had mooted any conflict with initial defense counsel. In addition, the same day, Lindy Frolich, the Director of

13

the Office of Alternate Defense Counsel, through counsel, filed a motion objecting to ADC's appointment for Webster.

¶ 30   Initial defense counsel, Quinn, Frolich, Frolich's counsel, and several ADC attorneys all attended the in-person status conference on February 3. At the beginning of the status conference, the court explained the pending motions to Webster and noted there was "no counsel with [Webster] at this time," given the court's previous finding that initial defense counsel had a conflict of interest and the ongoing objections from initial defense counsel and Frolich to the appointment of ADC for Webster.

¶ 31   As relevant to this appeal, at the February 3 status conference, the court asked Gonzalez whether she would appear at trial if the court reset the trial for that day and determined it was "safe to proceed and [it brought] in 200 more people for jury service and ma[de] the [COVID-19] accommodations[:] ordering . . . N95 masks and socially distancing the courtroom and picking the jury [over] four days." Gonzalez responded that her answer would depend "on the circumstances at the time."

¶ 32   The court then asked Gonzalez whether there would continue to be a conflict of interest "[i]f the [COVID-19] pandemic d[id] not

continue to go in a positive direction, or if there [was] a disagreement with the way the [c]ourt organize[d] the [reset] trial . . . ?" Gonzalez replied, "[I]f there [was] a suspension order in place and the positivity rate [was] similar to where [it was] right now[,] then" she thought there would be a conflict if the court forced initial defense counsel "to go to trial in those circumstances." Quinn then reiterated that, so long as initial defense counsel remained employed at the public defender's office, she would not appoint new attorneys from the office to represent Webster. The court denied the motion to reconsider from the bench.

¶ 33　On July 2, the trial court entered a detailed order confirming its denial of the motion to reconsider.

¶ 34　ADC continuously represented Webster following the entry of the July 2 order, including at his trial, which began on April 7, 2023.

### B.　The Court Did Not Deny Webster His Right to Counsel at a Critical Stage

#### 1.　Standard of Review

¶ 35　We "review an alleged violation of a constitutional right de novo." *People v. Cuevas*, 2024 COA 84, ¶ 21, 558 P.3d 1041, 1046.

15

### 2. The February 1 Status Conference Was Not a Critical Stage of the Proceeding

¶ 36    We initially note that Webster's opening brief fails to comply with C.A.R. 28(a)(7)(A) because it does not, "under a separate heading placed before the discussion of each issue," contain "statements of the applicable standard of review with citation to authority, whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled." It is not our responsibility to comb through the voluminous record to determine whether Webster's arguments were preserved or to identify the applicable standards of review. *See Black v. Black*, 2018 COA 7, ¶ 67, 422 P.3d 592, 604.

¶ 37    It appears to us that Webster's counsel never argued in the trial court that Webster was denied the right to counsel at a critical stage — the February 1, 2022, status conference, as Webster asserts on appeal.

¶ 38    Webster's argument that he was unrepresented at the status conference, which he characterizes as a critical stage of his criminal proceeding, fails for two reasons. First, three days before the status conference, the trial court entered an order saying that, because it

found "a conflict of interest existed with [initial defense counsel], Colorado law require[d] the appointment of an [ADC] attorney" and, accordingly, it "order[ed] that an [ADC] attorney be assigned to [Webster's] case." As a result, Webster had counsel of record — ADC — at the time of the February 1 status conference.

¶ 39 Webster does not cite any authorities holding that a represented defendant's Sixth Amendment rights are violated when defense counsel fails to appear at a status conference.

¶ 40 Second, and more importantly, even if Webster lacked counsel at the February 1 status conference, his Sixth Amendment rights were not implicated because the status conference was not a critical stage of the case. Nothing of substance occurred: the trial court did not rule on any pending motions and merely announced that it would consider the merits of those motions at another status conference later that week. Notably, Webster does not argue that he lacked counsel at the rescheduled status conference.

¶ 41 "Stages of criminal proceedings have been held to be 'critical' where there exists more than a 'minimal risk' that the absence of the defendant's counsel might impair the defendant's right to a fair trial." *Key v. People*, 865 P.2d 822, 825 (Colo. 1994) (quoting

17

*Gilbert v. California*, 388 U.S. 263, 267 (1967)). Even if, at the February 1 status conference, the trial court engaged in a substantive discussion regarding replacing initial defense counsel with ADC, courts in other jurisdictions have held that hearings on counsel replacement are not critical. *See, e.g.*, *LaGrand v. Stewart*, 133 F.3d 1253, 1277 (9th Cir. 1998) ("A motion to replace a criminal defendant's trial counsel admittedly creates a delicate situation for the lawyer, the defendant[,] and the court. But bringing in a new lawyer is not required to protect the defendant's rights."); *see also United States v. Franklin*, 547 F.3d 726, 734 (7th Cir. 2008) (explaining that a defense counsel's motion to withdraw does not "qualify as a critical stage of the proceedings for Sixth Amendment purposes, as the proceeding is simply not the sort of trial-like confrontation between the accused and the [S]tate that gives an accused a Sixth Amendment right to counsel").

¶ 42        For these reasons, the trial court did not violate Webster's Sixth Amendment right to counsel at a critical stage of his case.

## C.   The Court Did Not Violate Webster's Sixth Amendment Right to Counsel of Choice

¶ 43    There is no legal basis for Webster's argument that the trial court violated his Sixth Amendment rights by denying him counsel of choice.  "The right to the effective assistance of counsel is constitutionally guaranteed for all criminal defendants.  The right to choice of counsel is not.  It is well settled that the right to counsel of choice does not extend to defendants for whom the court appoints counsel." *People v. Rainey*, 2023 CO 14, ¶ 19, 527 P.3d 387, 392. *Rainey* firmly rested on United States Supreme Court jurisprudence that the Sixth Amendment right to counsel "does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *Rainey*, ¶ 19, 527 P.3d at 392.  Similarly, indigent criminal defendants like Webster have no right to continued representation by their initial appointed counsel.  *Rainey*, ¶ 2, 527 P.3d at 390.

¶ 44    Although indigent criminal defendants have no right to select or retain their appointed counsel, they have a due process interest in continuing to be represented by the lawyer the court initially appointed.  *See id.* at ¶¶ 23, 34, 527 P.3d at 393-94, 396.  But that

19

interest is not implicated unless the defendant "can demonstrate that prejudice would result from substitution with a different court-appointed attorney." *Id.* at ¶ 23, 527 P.3d at 394. A court does not violate a defendant's interest in continued representation by appointed counsel in the absence of a showing of actual prejudice. *See People v. Gardenhire*, 903 P.2d 1165, 1168 (Colo. App. 1995) (holding that "[a]bsent any evidence of prejudice based on the public defender's replacement with another public defender," there is "no reversible error in the trial court's ruling").

¶ 45    Webster appears to contend that the substitution of counsel prejudiced him by forcing him to choose between "his statutory right to a speedy trial and his constitutional right to effective and conflict-free counsel." But Webster does not argue that the trial court violated his statutory speedy trial right or that ADC was ineffective. Although he asserts he was prejudiced because his new attorneys were "unprepared, lacked adequate time to review extensive discovery, and requested continuances," Webster does not point to any errors following the appointment of ADC, nor does he identify any error during his fourteen-day jury trial.

¶ 46    Lastly, because Webster's counsel of choice argument in his opening brief solely rests on the Sixth Amendment, he has waived any argument that the court violated his due process rights by removing initial defense counsel and appointing ADC to represent him. *See People v. Owens*, 2024 CO 10, ¶ 90, 544 P.3d 1202, 1224 (treating contentions not raised in the opening brief as waived).

¶ 47    For these reasons, we hold that the trial court did not violate Webster's Sixth Amendment rights by ordering ADC to represent him in place of initial defense counsel.

### D.    The Trial Court Did Not Violate Webster's Sixth Amendment Right to Conflict-Free Counsel

¶ 48    "The Sixth Amendment's guarantee of effective assistance of counsel encompasses a defendant's right to conflict-free counsel." *People v. Shari*, 204 P.3d 453, 457 (Colo. 2009).  When defense counsel informs the court of a "probable risk of a conflict of interest[]," a court errs if it fails "to appoint separate counsel or to take adequate steps to ascertain whether the risk [is] too remote to warrant separate counsel." *Holloway v. Arkansas,* 435 U.S. 475, 484 (1978).

¶ 49     Initial defense counsel repeatedly advised the court that their health and family circumstances precluded their in-person appearance in court during the COVID-19 pandemic. Those concerns led initial defense counsel to file the conflict motion, in which they asked the court to allow them to withdraw as Webster's counsel if the court did not strike the January 19, 2022, trial date. When initial defense counsel informed the court of their conflict of interest, the court would have erred if it had failed to address it. *See id.* But Webster contends that the court erred by *addressing* their conflict of interest.

¶ 50     Further, Webster incorrectly blames the court for allegedly creating the conflict. But initial defense counsel admitted they had a conflict with Webster if the trial court scheduled the trial for a date when they believed that the COVID-19 pandemic placed them and their families at risk if they appeared in court in person.

¶ 51     In addition, continuing the January 19, 2022, trial date did not resolve initial defense counsel's conflict because Gonzalez and Rubinstein could not guarantee their availability for any future trial date. In early 2022, it was impossible to predict how long the COVID-19 pandemic would pose health risks for vulnerable

individuals such as initial defense counsel. If COVID-19 positivity rates remained high over the coming weeks and months, the trial court would have had to repeatedly set and continue multiple trial dates if it did not find new counsel for Webster. Such a course of action would have been untenable, particularly given the extraordinarily long period the case had been pending. *See People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006) (explaining that a defendant cannot delay his trial indefinitely while seeking counsel).

¶ 52 Moreover, Webster does not contend that ADC had a conflict of interest in representing him. The trial court provided Webster with conflict-free counsel after correctly finding that initial defense counsel had an ongoing conflict.

¶ 53 Because the trial court properly granted the alternate relief requested in the conflict motion to protect Webster's Sixth Amendment rights, and Webster does not argue that the court compelled him to proceed with conflicted counsel, the court did not violate his right to conflict-free representation, much less create initial defense counsel's conflict with Webster.

### III. Disposition

¶ 54 The judgment is affirmed.

23

JUDGE YUN and JUDGE SCHUTZ concur.